## UNITED STATES

v.

**Dennis A. TEDDER, 441 54 6946, Captain (O-3), U.S. Marine Corps.**

**NMCM 83 5500.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 19 Aug. 1983.

13 July 1984.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

LT Ronald S. Wasilenko, JAGC, USNR, Appellate Government Counsel.

Before EOFF, C.J., and MAY and CASSEL, JJ.

PER CURIAM:

This case, a general court-martial of a Marine Corps officer, was tried before members on 10, 17, 18, and 19 August 1983. Appellant was convicted of conduct unbecoming an officer and gentleman, obstruction of justice, and two specifications of wrongful fraternization, violations of Articles 133 and 134, respectively, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 933, 934.[1] The members sentenced appellant to confinement at hard labor for one year, total forfeitures, and dismissal from the service, which was approved, along with the findings, by the convening authority on 14 October 1983, except that he limited the confinement to be served to 45 days. The case is now before us on

---

1. Appellant was found not guilty of two extortion offenses, violations of Article 127, UCMJ, 10 U.S.C. § 927, and a specification alleging the communication of a threat was withdrawn.

appeal for mandatory review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

## I. Facts

During the latter part of 1982, the Naval Investigative Service initiated an investigation of LCPL [C] as a result of accusations of homosexuality. On approximately 9 November 1982, she went to appellant's office for advice on this matter in his capacity of squadron legal officer. After a brief consultation, they engaged in some informal conversation, during which appellant, upon a realization that they both patronized the Northwoods Tavern in Jacksonville, North Carolina, offered to buy her a beer if he saw her there the following weekend.

LCPL [C] and her roommate decided to go to the Northwoods Tavern that Saturday night, 13 November 1982, ostensibly to meet appellant for drinks. They arrived at about 1930 and appellant, accompanied by two other commissioned officers, entered the bar sometime thereafter. The five conversed for about an hour and, according to LCPL [C]'s testimony, she called appellant by his first name and he referred to her by her nickname. While it is uncertain as to who purchased the drinks consumed that evening, neither LCPL [C] nor her roommate recalled paying for them. It is also apparent from the record that the meeting was not considered to be a formal "date" by either appellant or LCPL [C]. However, appellant instructed LCPL [C], that if anyone so inquired, to deny that any more occurred that night than that appellant complied with his prior statement that he would buy her a beer if he happened to see her at the bar.

Sometime the following week, appellant and LCPL [C] discussed meeting at the Northwoods Tavern again. LCPL [C] informed appellant that she would be there that Friday night, 19 November 1982, and that she would allow him to buy her a drink if he was there. Later in the week, while boasting that she had a date with an officer that weekend, LCPL [C] asked one SGT [C]

about the existence of an order on fraternization.

At about 2000 the following Friday night, LCPL [C] arrived alone at the Northwoods Tavern. She encountered appellant who was there with two friends. Shortly thereafter, the friends left for the Tiki Club, another Jacksonville nightspot, and appellant and LCPL [C] remained and talked for about two hours. They briefly dropped by the Tiki Club and subsequently concluded the evening at appellant's home, where they watched television and then engaged in sexual intercourse. Again, they agreed that, in the event of any inquiry, they would assert that their personal contact was limited to appellant's offer to buy her a beer if he saw her at the Northwoods Tavern.

Both appellant and LCPL [C] were the objects of Naval Investigative Service investigations. LCPL [C], testifying under a grant of immunity, alleged that even after she had received the grant of immunity appellant encouraged her that their conduct would not be discovered if they kept their "stories" straight and informed her that the Marine Corps captain who was staying at his house the night they had sexual intercourse, if asked, would deny having seen her there.

Appellant was interested in getting involved with at least one other female enlisted servicemember. On several occasions he solicited two enlisted personnel to arrange a date for him with one SGT [Mc]. He conversed with SGT [Mc] in a "flirtatious" manner, but never directly asked her for a date.

The convictions for wrongful fraternization[2] arose from appellant's encounters with LCPL [C] on 13 and 19 November 1982 and the obstruction offense[3] emanated out of his subsequent efforts to "cover up" these events. His attempts to solicit a date with SGT [Mc] resulted in the convic-

---

2. Specifications 1 and 2, Charge III.

3. Specification 3, Charge III.

tion for conduct unbecoming an officer and gentleman.[4]

## II. Issues

Appellant has assigned nine errors for appellate review. We elect to consolidate the assignments into four categories of issues which we believe form the crux of appellant's argument that he has suffered substantial prejudice in this case. The issues for decision, therefore, comprise the following assertions: (1) that because the obstruction of justice offense requires the pendency of a judicial proceeding at the time the offense was allegedly committed, the military judge erred in failing to grant appellant's motion to dismiss, and that the offense was not proven beyond a reasonable doubt; (2) that the fraternization specifications fail to allege offenses and that they were not proven beyond a reasonable doubt; (3) that the fraternization offenses are unconstitutionally void for vagueness; and (4) that the charge of conduct unbecoming an officer and gentleman fails to allege an offense and that the offense was not proven beyond a reasonable doubt.[5] We agree with appellant that the Government did not prove the fraternization offense which allegedly occurred on 13 November 1982 beyond a reasonable doubt. In all other respects, however, we affirm.

## III. Analysis

### (1) Obstruction of justice and the pendency of a judicial proceeding.

Appellant was convicted of obstructing justice between November 1982 and 22 February 1983. During this period, the Naval Investigative Service was pursuing an investigation of appellant. However, judicial proceedings had not yet commenced, as the case was not referred to an

---

**4.** Charge II and the specification thereunder.

**5.** Appellate defense counsel has also invited our attention to other issues raised by trial defense counsel pursuant to *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), and appellant's clemency petition. The issues are without merit and are therefore rejected.

Article 32, UCMJ, pretrial investigation until 11 April 1983.[6]

The offense was charged under Article 134, UCMJ. At trial, the defense moved to dismiss the specification for failure to allege an offense because the alleged criminal conduct occurred prior to the initiation of judicial proceedings. The pendency of a judicial proceeding, the defense argued, is an element of the offense which the Government must prove beyond a reasonable doubt. The military judge disagreed and denied the motion. Appellant now asserts that this ruling was error and, in a related contention, that the offense was not proven beyond a reasonable doubt. We, however, conclude that appellant's argument is without merit.

■ Obstruction of justice is a cognizable offense under Article 134, UCMJ, regardless of the pendency of a judicial proceeding. *United States v. Ridgeway*, 13 M.J. 742 (A.C.M.R.1982); *United States v. Chodkowski*, 11 M.J. 605 (A.F.C.M.R.1981). Acts which are committed with the intent to frustrate the bringing of criminal charges can be as detrimental to the furtherance of military justice as is conduct which occurs subsequent to the pendency of a judicial proceeding. As the Air Force Court of Military Review recognized in *Chodkowski:*

> The impact of such conduct is equally pernicious and disruptive whether or not formal charges are pending. To hold otherwise would permit the integrity of the court-martial process to be compromised on the eve of its birth. In effect, those who were alert enough to act immediately before the formal process began would be insulated from dire consequences for their perverse conduct.

*Id.* at 607.

We note that appellant, in his brief, alludes to the use of the federal obstruction

---

**6.** Charges were preferred on 9 March 1983 and the case was referred to trial on 3 August 1983. The trial counsel was conducting individual preparation at this time.

of justice provisions[7] as a guide for the Manual's model specification for charging the offense under Article 134, UCMJ. While this argument is not developed, appellant's position appears to be that the constraints imposed by the federal criminal code, which include the requirement that a judicial proceeding be pending when the alleged obstruction offense occurs, apply to the Codal prohibition. However, the Article 134, UCMJ, offense is independent of the federal statutes and the elements prescribed thereunder. *United States v. Long*, 2 U.S.C.M.A. 60, 6 C.M.R. 60 (1952); *United States v. Chodkowski, supra. See also United States v. Ridgeway, supra.*

The military judge therefore properly denied appellant's motion to dismiss. It also follows from the foregoing that the challenged offense was proven beyond a reasonable doubt.

### (2) Wrongful fraternization

Appellant initially asserts that the specifications charging wrongful fraternization in violation of Article 134, UCMJ, fail to allege offenses. In the alternative, he argues that the offenses were not proven beyond a reasonable doubt.

The first contention urges the re-examination of the old Navy Board of Review's decision in *United States v. Free*, 14 C.M.R. 466 (N.B.R.1953). In that case, the accused was a Marine Corps captain who was court-martialed for his inappropriate involvement with a male junior enlisted member. The officer, after a night of socializing which included treating the enlisted servicemember to dinner, extended him an invitation to sleep in his room at the BOQ. The enlisted servicemember accepted and was later awakened by the discovery of the accused in bed with him. The Board identified the problem presented as the formulation of a "line as to where acts of fraternization or association with enlisted men by officers cease to be the innocent acts of comradeship and normal social intercourse between members of a democrat-

ic fighting force and become a violation of Article 134 of the Code, prejudicial to good order and discipline in the armed forces of the United States." *Id.* at 468. The same question is now before us some 30 years later.

The crux of appellant's position is found in the rationale set forth in *United States v. Johanns*, 17 M.J. 862 (A.F.C.M.R.1983), wherein the Air Force Court of Military Review reversed a conviction under Article 133, UCMJ. The accused in that case was found guilty by the trial court of four specifications of "dishonorably and disgracefully *fraterniz[ing]* and associat[ing] on terms of military equality with enlisted members of the United States Air Force." *Id.* at 864 (emphasis supplied by that court).[8] None of the female enlisted servicemembers involved were within the command of the accused or under his supervision.

The review court, sitting *en banc*, was unable to discern a clear-cut standard for gauging wrongful fraternization within the Air Force and thus held that offenses grounded on fraternization were not actionable under the UCMJ. *Id.* It appears that the court was also persuaded by the lack of precedent which did not involve some type of aberrant sexual conduct and its observation to the effect that once the parties involved in fraternization consummate the relationship with marriage an offense no longer exists. *Id.* at 867. The court asked itself if "fraternization is inimical to good order and discipline in the armed forces, how then could marriage change that effect?" *Id.* The administrative process was advocated as a more appropriate avenue than the criminal justice system to alleviate the problems caused by wrongful fraternization. *Id.*

■ We recognize that there may very well be a disparity in the customs observed within the various armed services and, following therefrom, that the pronouncement

---

7. *See* 18 U.S.C. Sections 1503 and 1505 (1976).

8. He was also convicted of adultery, under Article 134, UCMJ, which was sustained on review.

of *Johanns* may correctly reflect the status of the prohibition against wrongful fraternization in the Air Force. In our judgment, however, the reasoning of that case has no applicability to the naval service. We are convinced that the custom which prohibits wrongful fraternization continues in its vitality and remains necessary for the maintenance of an effective Navy and Marine Corps.

The Manual provides a succinct explanation of military custom:

In its legal sense the word 'custom' imports something more than a method of procedure or a mode of conduct or behavior which is merely of frequent or usual occurrence. Custom arises out of long established practices which by common consent have attained the force of law in the military or other community affected by them.

Paragraph 213*b*, *Manual for Courts-Martial, 1969 (Rev.)*.

We do not perceive, at least within the naval service, any abandonment of the practice which prohibits fraternization under circumstances where such conduct is either prejudicial to good order and discipline or service discrediting. This conclusion is bolstered by the specific enumeration of wrongful fraternization as a violation of Article 134, UCMJ, in the Manual, *see* paragraph 83, *Manual for Courts-Martial, (1984)*, and by the precedent established in prior case law. *See, e.g., United States v. Pitasi*, 20 U.S.C.M.A. 601, 44 C.M.R. 31 (1971); *United States v. Free, supra.*

The rationale for a rule prohibiting wrongful fraternization was eloquently articulated in *Free* and reiterated by Senior Judge Ferguson in *Pitasi*, wherein the Court of Military Appeals, being "impressed by the reasoning and logic of the *Free* opinion," incorporated substantial language therefrom into its decision. As stated by the Navy Board of Review:

The military services demand a regard for authority by juniors towards their seniors which experience has shown is enhanced by the observance of decorum, tradition, custom, usage, and conventions which are peculiar to the services alone. The regard and respect for authority upon which rests the unquestioned obedience of the serviceman which is mandatory in time of battle or stress is lessened by the failure to observe niceties of military courtesy and other traditions and customs.

*United States v. Free, supra*, 14 C.M.R. at 469–70. *See also United States v. Pitasi, supra* 20 U.S.C.M.A. at 607, 44 C.M.R. 37.

Appellant's concern that the Article 134, UCMJ, proscription against wrongful fraternization may have a detrimental effect upon positive and encouraged interaction between officers and enlisted personnel is misplaced. As was observed by the Board in *Free:*

There is nothing reprehensible about officers and enlisted men playing on the same athletic team, riding in the same vehicle, or occupying the same billet under conditions usually acceptable. At a service dance, for instance, it would not be a violation of the custom of the service for a male commissioned officer to dance with a female enlisted person or vice versa.

*Id.* at 469.

We also reject the argument that such a rule imposes an unfair burden upon Navy and Marine Corps officers. It is recognized that commissioned officers enjoy a unique, "special position of trust and duty". *United States v. Means*, 10 M.J. 162, 165 (C.M.A.1981). *See also Parker v. Levy*, 417 U.S. 733, 744, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439 (1974). Following therefrom, we again quote from *Free:*

It is not at all difficult for the reasonably prudent officer to discriminate between what circumstances justify a particular act and what render the act so curtailing of the dignity required by an officer's obligations as to make it an offense against good order and discipline. True, discrimination must be exercised, but the nature of an officer's commission demonstrates that he has been selected from among the populace as a whole to hold a

position of trust and honor and has been trained to exercise the nice discrimination required. It is likewise true that a degree of judgment is required of an officer which is not required of the enlisted member of the service or of a civilian. It follows that a different standard of conduct is required in law of an officer than is required of others. This, in effect, puts him in a different legal status than the enlisted man or the civilian.

*Id.* 14 C.M.R. at 471.

█ We agree with appellant, however, that specification 1, Charge III, was not proven beyond a reasonable doubt. The Government failed to show that the conduct involved—a brief conversion among several officers and enlisted personnel over drinks—was either prejudicial to good order and discipline or service discrediting. The evidence of record does not reveal any behavior or association beyond that long accepted as appropriate and dignified. *See United States v. Free, supra.*

The finding of guilty to specification 1, Charge III, is therefore reversed and the specification ordered dismissed. Specification 2, Charge III, which we specifically find to have been proven beyond a reasonable doubt, is affirmed.

### (3) The Constitutional challenge to the prohibition against wrongful fraternization.

Appellant next presents the argument that the instant fraternization offenses are unconstitutionally void for vagueness. We cannot agree.

It is established that an offense brought under Article 134, UCMJ, is not unconstitutionally vague. *E.g., Parker v. Levy, supra; United States v. Sadinsky,* 14 U.S.C. M.A. 563, 34 C.M.R. 343 (1964). Likewise, the Court of Military Appeals has specifically considered the issue in the instant context and found the charging of wrongful fraternization under the article to pass constitutional muster in this regard. *United States v. Pitasi, supra* 20 U.S.C.M.A. at 608, 44 C.M.R. 38. We find no circum-

stances present in this case which would necessitate a contrary result.

### (4) Article 133, UCMJ

We summarily reject appellant's assertions that the charge alleging conduct unbecoming an officer and gentleman fails to allege an offense and that the offense was not proven beyond a reasonable doubt. Neither argument has merit.

### IV. Conclusion

Accordingly, the findings as modified herein are affirmed. Upon reassessment, we find the sentence to be appropriate in light of the seriousness of the instant offenses and the clemency action on the part of the convening authority. The sentence as approved on review below is therefore affirmed.