## UNITED STATES

v.

**First Lieutenant Joseph T. McCREIGHT, Jr., 219–56–7433, United States Air Force.**

### ACM 30137.

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 June 1992.

Decided 27 Jan. 1994.

---

Appellate Counsel for the Appellant: Colonel Francis T. Lacey (argued), Colonel Terry J. Woodhouse, Lieutenant Colonel Jay L. Cohen, and Major George F. May.

Appellate Counsel for the United States: Captain Jane L. Harless (argued), Colonel

Jeffery T. Infelise, and Lieutenant Colonel Thomas E. Schlegel.

Before DIXON, GRUNICK, and PEARSON, Appellate Military Judges.

## OPINION OF THE COURT

PEARSON, Judge:

A military judge sitting as a general court-martial convicted First Lieutenant McCreight of one specification of conduct unbecoming an officer, in violation of Article 133, UCMJ 10 U.S.C. § 933, by maltreating female Airman First Class CB and committing adultery with her; and separate specifications of committing adultery with another officer's wife, fraternizing with male Senior Airman RW, and serving alcohol to underage Airman CB and her husband, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced Lieutenant McCreight to a dismissal, 10 months confinement, and forfeiture of all pay and allowances. The convening authority reduced the confinement to 107 days, but otherwise approved the sentence as adjudged.

On appeal, Lieutenant McCreight contends the evidence is insufficient to support the convictions of fraternization and conduct unbecoming by maltreatment, the only offenses he pled not guilty to in this mixed plea case. We find the evidence is sufficient to prove fraternization but insufficient to prove maltreatment.

## FACTS

Appellant, a 26–year–old intelligence officer, was the Assistant Officer in Charge of the section where Airman RW worked. Appellant and Airman RW started out playing sports together. They became close friends and from sports progressed, in June or July 1991, to going out drinking together at local night spots. On one occasion in September 1991, they went to a local hotel where they drank and gambled. At least once, Airman RW was the "designated driver" for the evening and appellant was the "designated drunk." Airman RW would also sleep over at appellant's off-base apartment from time to time when he felt uncomfortable driving after drinking or when tired.

Appellant and Airman RW were on a first-name basis off-duty. Appellant shared his closest confidences with Airman RW, including his having sex with an officer friend's wife while stationed in Spain. Airman RW was always concerned that their relationship could cause appellant problems in the Air Force even though they were "discreet." In late October or early November 1991, their close relationship ended. Other enlisted personnel in the section were aware of appellant's close relationship with Airman RW.

On September 20, 1991, after a night out on the town, appellant and Airman RW stopped by Airman First Class SB's off-base apartment at around 2330 in appellant's car. Airman SB was also a subordinate in appellant's section and was away on temporary duty. Airman CB, Airman SB's wife, was home. She talked with appellant and Airman RW for a while and gave them beer. At some point, Airman RW complained he was tired. Appellant gave him the keys to the car, whereupon Airman RW left for appellant's apartment, leaving appellant behind. Shortly thereafter, appellant and Airman CB engaged in sexual intercourse and then fell asleep. Upon awakening, appellant went to his apartment, awoke Airman RW, and shared the intimate details of his previous night's activities with Airman CB.

The next Saturday at about midnight, appellant once again went calling on Airman CB while her husband was gone. Once again they engaged in sex.

On Halloween night in 1991, Airmen CB and SB stopped by the restaurant where appellant tended bar part-time. He poured them both beers even though he knew they were underage according to state alcohol laws. On returning home that night, Airman CB told her husband SB about having sex with appellant. She offered, by way of explanation, that appellant had threatened to hurt Airman SB's performance ratings and pending assignment unless she had sex with him.

## FRATERNIZATION

Appellant argues the evidence is insufficient to prove, beyond a reasonable

doubt, that (1) he treated Airman RW as an equal; (2) the custom of the service prohibits officers and enlisted from forming "friendships" and "socializing"; (3) his conduct was prejudicial to good order and discipline; and (4) appellant was on notice that his conduct was "illegal and violated the custom." During oral argument before us, appellate defense counsel also urged that we should not reach a holding in this case that would make officers criminally liable for fraternization merely by drinking with enlisted personnel in social settings.

We note at the outset that the government did not prosecute appellant for being Airman RW's friend, for drinking with him off base, or for allowing Airman RW to spend the night at his apartment one time. Instead, the government charged appellant with fraternizing on terms of military equality with Airman RW, an enlisted person under his supervision, between March and November 1991, by drinking together under circumstances where appellant was the "designated drunk" and Airman RW was the "designated driver" and by allowing Airman RW to "repeatedly" stay in his apartment. On appeal, the government does not seek a bright line rule which equates particular conduct to fraternization. Instead, the government argues that each case depends upon its own facts— we agree.

█ In determining whether an officer's conduct amounts to unlawful fraternization in a particular case, a court must look at the totality of the circumstances, and not view facts in a vacuum. As we stated in *United States v. Johanns*, 17 M.J. 862, 868 (A.F.C.M.R.1983), *aff'd in part and rev'd in part*, 20 M.J. 155 (C.M.A.1985), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985), "It is the nature of the acts themselves, the place where they occur, the presence or absence of other people, the military relationship between the officer and the enlisted member, and the likely effects of the incident on the attitude of the enlisted member and others present which are all important in determining whether [alleged] acts between officers and enlisted members are unlawful." *See also United States v. Guaglione*, 27 M.J. 268 (C.M.A.1988) (Under the

facts, Army first lieutenant not guilty of conduct unbecoming an officer by visiting German house of prostitution with three privates first class).

█ Customs of the service provide notice to an officer of what limits exist on relationships with enlisted subordinates when other regulatory or statutory guidance does not. Customs of the service also provide notice to officers of what behavior is unbecoming an officer and gentleman, prejudicial to good order and discipline, and service discrediting. *United States v. Boyett*, 37 M.J. 872 (A.F.C.M.R.1993) (en banc); *United States v. Arthen*, 32 M.J. 541 (A.F.C.M.R.1990). With that said, we are convinced, beyond a reasonable doubt, that appellant knew his conduct was wrong, flouted military authority, and was prejudicial to good order and discipline.

The government called three witnesses to establish the custom of the service regarding drinking and sleeping arrangements between officer supervisors and enlisted subordinates and appellant's knowledge of the custom. Major C, the Chief of Intelligence, testified he explained the dangers of "fraternization socializing" to appellant during the first week of September 1991, including the perceptions of favoritism that might arise. Major C and one of appellant's officer co-workers also testified about a September 1991 training session where Major C told appellant and other intelligence personnel that officer and enlisted "drinking together" on a "one-on-one" social basis was improper.

Consequently, appellant knew his conduct did not comply with his superiors' views of what constituted "fraternization." If appellant knew drinking together was prohibited, he surely realized being the "designated drunk" and continually sleeping over with an enlisted subordinate, much less sharing details of his sexual conquest of another subordinate's wife, would not pass muster.

█ So there is no misunderstanding, we do not hold today that officer supervisors commit criminal fraternization merely by drinking or visiting with enlisted subordinates in social settings. This case rests on its own unique facts. "The problem presented to us is to draw a line as to where acts of

fraternization or association with enlisted men [and women] by officers cease to be the innocent acts of comradeship and normal social [relationships] between members of a democratic military force and become a violation of Article 134 of the Code, prejudicial to good order and discipline of the armed forces of the United States." *United States v. Free,* 14 C.M.R. 466, 468 (N.B.R.1953). Appellant's conduct went over the line—we know it and he knew it.

Taking appellant's conduct as a whole, we are convinced of the legal and factual sufficiency of the evidence to support a conviction for unlawful fraternization. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

### MALTREATMENT

Appellant contends the military judge erred by not granting a motion for a finding of not guilty as to that portion of the conduct unbecoming an officer specification that alleged appellant maltreated Airman CB. Appellant's attack is really on the sufficiency of the evidence since the threshold for denying a motion for a finding of not guilty is extremely low. *See* R.C.M. 917(d).

■ Appellant contends the maltreatment portion of the specification in question was really an Article 93, UCMJ, maltreatment offense in Article 133 clothing. Thus, the government had to prove, beyond a reasonable doubt, all of the elements of the Article 93 maltreatment offense, plus the added element that appellant's conduct had to be conduct unbecoming an officer and gentleman. We agree. MCM, Part IV, paragraph 59c(2) (1984).

■ For an Article 93 maltreatment offense to lie, the victim must be "subject to the orders of the accused." Appellant contends the evidence does not show any command or duty relationship between appellant and Airman CB that would satisfy the "subject to the orders" element of the offense. *See* MCM, Part IV, paragraph 17c(1) (1984); *United States v. Curry,* 28 M.J. 419, 424 (C.M.A.1989); *United States v. Dickey,* 20 C.M.R. 486 (A.B.R.1956). The government contends on appeal, as it did at trial, that appellant's officer status was sufficient in and of itself to make Airman CB subject to his orders.

While an interesting issue with almost no case law on point, we need not resolve it here as we have a more fundamental basis on which to decide this matter. We are simply not convinced, beyond a reasonable doubt, based on the evidence presented that appellant threatened Airman CB in any manner in order to have sex with her or otherwise. Article 66(c), UCMJ; *United States v. Turner.*

In this regard, several witnesses testified Airman CB made advances toward appellant at an August 1991 party. More importantly, she did not seem the least concerned when Airman RW left appellant behind in the early morning hours without a car on the first night they visited her. Accordingly, we approve only so much of the specification of Charge I as provides that appellant did, on two occasions between on or about September 20, 1991 and on or about September 28, 1991, wrongfully have sexual intercourse with Airman First Class CB, a married woman not his wife, such acts constituting conduct unbecoming an officer and gentleman.

### SENTENCE REASSESSMENT

■ We conclude we are able to accurately determine what sentence the court would have adjudged absent the maltreatment language in the court's findings of guilt. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990).

The most serious aspect of this case is appellant's relationship with Airman CB. Appellant did not just have sex with a subordinate. Instead, he committed a much more egregious offense: he had sex with a subordinate's spouse when the subordinate was away on temporary military duty, not once but twice, and intertwined another subordinate in his illicit sexual activities. Moreover, this is clearly not a case of star-crossed lovers or an individual succumbing to temptation without a moment to reflect on the consequences of his actions.

Taking into consideration the evidence of record and remaining findings of guilt, we determine the court would not have adjudged a sentence less than that approved by the

convening authority in his action which reduced the term of confinement from 10 months to 107 days. We further determine such sentence is appropriate for the appellant and the offenses.

## CONCLUSION

The findings, as modified, and sentence are correct in law and fact and on the basis of the entire record are

AFFIRMED.

Chief Judge DIXON and Judge GRUNICK, concur.