UNITED STATES, Appellee

v.

Joseph T. McCREIGHT, Jr., First
Lieutenant, U.S. Air Force,
Appellant.

No. 94–0663.
CMR No. 30137.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 1, 1995.

Decided March 29, 1996.

For Appellant: *Captain Marge A. Overly*
(argued); *Colonel Jay L. Cohen* and *Captain*
*William B. Cox* (on brief); *Colonel Francis*
*T. Lacey* (USAFR), *Lieutenant Colonel Jo-*
*seph L. Heimann, Major George F. May.*

For Appellee: *Captain R. Scott Howard*
(argued); *Colonel Jeffery T. Infelise* and
*Captain Jane L. Harless* (on brief); *Lieuten-*
*ant Colonel Michael J. Breslin* and *Major*
*John H. Kongable.*

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, appellant was con-
victed of adultery, serving alcohol to a minor,
and maltreatment of a subordinate by having
an adulterous affair with the wife of an en-
listed airman. Contrary to his pleas, he was
convicted of fraternizing with Senior Airman
Robert W. The military judge sentenced
appellant to dismissal, 10 months' confine-
ment, and total forfeitures. The convening
authority approved the sentence but reduced
the confinement to 3 1/2 months. The

Court of Military Review * changed the maltreatment specification to one of simple adultery, but otherwise affirmed the findings and the approved sentence. 39 MJ 530, 534, 535 (1994). We granted review of the following issue:

WHETHER EVIDENCE OF RECORD IS LEGALLY INSUFFICIENT TO SUSTAIN THE MILITARY JUDGE'S FINDING WITH RESPECT TO SPECIFICATION 2 OF CHARGE II WHICH ALLEGES FRATERNIZATION BETWEEN APPELLANT AND SENIOR AIRMAN [W] [BETWEEN MARCH—NOVEMBER 1991].

We hold that the evidence is legally sufficient to sustain appellant's conviction for fraternization.

## FACTS

Appellant was an intelligence officer who worked as a targeting officer at Minot Air Force Base, North Dakota. Senior Airman Robert W worked in the targeting office under appellant's supervision and often was detailed tasks by appellant. When appellant first arrived in the targeting office, his relationship with W was casual. They participated together in activities with the entire office and played in sporting events. This relationship changed. Appellant and W became companions for watching "Monday night football," dinner, drinking, and gambling. Additionally, W spent several nights at appellant's residence. He drove appellant's car and housesat for him. Off-duty W referred to appellant by his first name and even called him by his first name once at work. The two went out to breakfast, church, and the mall together. On at least one occasion, appellant asked W to be the "designated driver" while appellant was the "designated drunk."

The Government called four witnesses whose combined testimony provided evidence that the relationship appellant had with his subordinate was improper. First, Lieutenant Colonel Mykes testified to the existence of a "custom" in the Air Force regarding fraternization. He further testified that fraternization in "the Air Force can occur even

*See* 41 MJ 213, 229 n. * (1994).

when there is no sexual contact between the officer and the enlisted person." While he testified that it may be acceptable for an officer and an airman to go out together, it is "not acceptable" when they are seen together "in a drinking situation."

Second, Sergeant Ziegler testified that he and W were in the same chain of command as appellant and that he was aware that appellant and W were "socializing." Next, First Lieutenant Northrup testified that the "custom ... against fraternization" in the Air Force precluded "undue familiarity, socializing after hours, drinking at the bars and clubs." She also testified that she and appellant attended and participated in a division training session in which there was "a general reminder" that the Air Force does not "tolerate" fraternization.

Finally, appellant's supervisor, Major Cowart, testified that he told appellant that it was "improper for officers and enlisted to refer to each other by first name basis." He further told appellant of "the dangers of improper fraternization" and "explained" that it put enlisted individuals in an "awkward" situation. He also testified that appellant attended and participated in a division training session where the discussion included "improper officer/enlisted relations."

The defense argues that there is no custom and tradition in the Air Force against fraternization, except as between officers and enlisted servicemembers in the same command that involves a sexual relationship. The defense contends that the Government has not proved that appellant fraternized on "terms of military equality," see 39 MJ at 533, violated a custom, or that the conduct was prejudicial to good order and discipline. Final Brief at 6–9. The defense also alleges that the Government seeks "to prove a custom which would preclude friendships based upon status but their witnesses talked in generalities." Final Brief at 7.

The Government responds to an allegation of there being "a gray area" regarding fraternization, Final Brief at 8, by pointing out that

[a]ppellant was given a road map to guide him and there were no unmarked roads. Certainly the detours of gambling with subordinates, drinking with subordinates, and allowing an enlisted person to share his quarters were highlighted as forbidden territory.

Answer to Final Brief at 9.

## DISCUSSION

■ Our standard of review "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The elements of the offense are as follows:

1. That appellant was a commissioned officer.

2. That appellant "fraternized on terms of military equality" with an enlisted member.

3. That appellant "then knew that the person" was an enlisted member.

4. That such conduct "violated the custom" of appellant's branch of service.

5. That the conduct was prejudicial to "good order and discipline in the armed forces" or was service discrediting.

¶ 83b, Part IV, Manual for Courts–Martial, United States (1995 ed.).

The issues in this case center on elements 2 and 4. As this Court stated in *United States v. Boyett*, 42 MJ 150, 154–55 (footnote omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 308, 133 L.Ed.2d 212 (1995):

The proscription against improper relationships between servicemembers of different ranks, now commonly referred to as fraternization, descended from the Roman ranks. Military organizations are made up of people who carry out various missions. These individuals must respect and trust one another. Actual or apparent partiality, preferential treatment, or improper use of rank prejudices good order, discipline, and high unit morale. This was recognized in *U.S. v. Johanns (Johanns I):*

Anyone who believes that a leader can mechanically assign a "friend" to unpopular or hazardous duty is unrealistic. Axiomatically, the troops will be highly aware of the duties assigned to an enlisted person(s) with whom an officer habitually associates or consorts. That is the prejudice to good order and discipline which the line between ranks is meant to prevent; and an officer and a gentleman will endeavor to keep oneself [sic] on the appropriate side of that line.

17 MJ 862, 872 (Snyder, J., concurring in part and dissenting in part).

■ Since Revolutionary War days, it has been considered unlawful for officers to drink alcohol with enlisted men in public places and to treat them on terms of military equality. Carter, *Fraternization*, 113 Mil. L.Rev. 61, 64–65 n.25, 74–81 (1986). The egregiousness of the conduct may vary. *Compare id. with* W. Winthrop, *Military Law and Precedents* 716–17 (2d ed.1920 reprint). However, there is no requirement for a sexual relationship. There are appropriate circumstances for officers and their enlisted subordinates to socialize. *See, e.g., United States v. Tedder*, 18 MJ 777, 781–82 (NMCMR 1984), *aff'd*, 24 MJ 176 (CMA 1987); and *United States v. Stocken*, 17 MJ 826, 829 (ACMR 1984); *see also United States v. Guaglione*, 27 MJ 268 (CMA 1988). Appellant's conduct crossed the line separating acceptable acts of comradeship and social contact between officers and enlisted individuals from improper socializing "on terms of military equality." ¶ 83b(2), Part IV.

Appellant showed partiality and preferential treatment to W. They were on a first-name basis, both at work and when W was at appellant's home watching ballgames, dining, drinking, or gambling together. On at least one occasion, appellant told W that he would be the "designated drunk" and W would be the driver. There is no question in this case that there was a custom against fraternization which precluded "undue familiarity, socializing after hours, drinking at the bars and clubs." Three of the government witnesses in this case testified about the custom and tradition in the Air Force against fraterniza-

tion. Not one witness testified that the conduct in question was lawful or would be tolerated in the Air Force.

Because there is evidence that appellant fraternized with an enlisted man on terms of military equality in violation of an Air Force custom, we hold that the evidence is sufficient to sustain the conviction for fraternization.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge COX and Judges SULLIVAN and GIERKE concur.

EVERETT, Senior Judge (concurring):

On a number of occasions in the past, I have expressed my great concern about the amorphousness of the offense of fraternization, particularly in the Air Force, and my belief that, if the Air Force wants to punish such conduct as criminal, it should issue a suitable punitive regulation that would define the specific types of conduct that are prohibited. *See, e.g., United States v. Fox,* 34 MJ 99 (CMA 1992); *United States v. Appel,* 31 MJ 314 (CMA 1990); *United States v. Wales,* 31 MJ 301 (CMA 1990); *United States v. Johanns,* 20 MJ 155(CMA), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); *see generally* Smith, "The Air Force and Fraternization: In Search of a Custom," 43 *The Federal Lawyer* 10 (No. 2, February 1996). However, in view of the uncontradicted testimony at trial about the Air Force custom, *see United States v. Wales, supra* at 309, and consistent with the recognition that, historically, some types of fraternization have been prohibited, I must give credence to the unrebutted government evidence that this custom was violated by appellant.

Even in a military context, certain aspects of the First Amendment freedoms of speech and association persist. Therefore, I have some concern that an officer's sharing an off-post facility with an enlisted person and being addressed by first name off post and away from military places of duty could be punishable as fraternization. This accused's conduct, however, went much further than that. Accordingly, I concur in the majority opinion.