BAKER, Chief Judge
(dissenting):
The question presented by this case is whether a reasonable member of the armed forces would have fair notice that possession of images charged under Specification 3 were of a nature to bring discredit upon the armed forces and thus subject to Article 134 sanction. Article 134, UCMJ, 10 U.S.C. § 934 (2012). Specification 3 charged Appellant with possession of “some images that depict minors as sexual objects or in a sexually suggestive way.” The images depict young prepubescent and pubescent girls in sexually suggestive positions. In several of these images, girls are dressed as prostitutes in G-strings; one such image even exposes pubic hair, though not the private parts. Superimposed on these images are aggressive commands such as “POUND HER PUSSY!” and “MAKE THIS BITCH GIVE HEAD UNTIL HER FACE TURNS RED!”
The majority concludes that Appellant was not on fair notice that possession of these pictures would bring discredit upon the armed forces. United States v. Warner, 73 M.J. 1, 2, 4 (C.A.A.F. 2013). I disagree. Any reasonable member of the armed forces (in fact any member of the armed forces) of *5 any grade or service would know that these pictures were service discrediting, based on the elements of Article 134, UCMJ, and common sense. Therefore, I respectfully dissent. My analysis follows.
Section I describes the pictures at issue. Section II demonstrates that the additional forms of notice discussed in Vaughan and Saunders are not required because Article 134, UCMJ, elements provide fair notice where common sense makes their reach obvious as recognized by the extensive case law of military courts. United States v. Vaughan, 58 M.J. 29 (C.A.A.F.2003); United States v. Saunders, 59 M.J. 1 (C.A.A.F.2003). In Section III, I discuss the repercussions of this Court’s adoption of a literal and mechanistic interpretation of Article 134, UCMJ, notice.
I. The Pictures
The questions we need to answer are not whether “child erotica” is constitutionally protected, whether it is an offense under Title 18, or whether Appellant was on fair notice that “child erotica” was service discrediting.[1] That is not this case. Rather, this ease is about a specific defendant possessing specific pictures depicting specific children as charged in a particular specification under Article 134(2), UCMJ.
Here, Appellant was charged with the possession of twenty-three specific pictures that depict minor children as sexual objects or in a sexually suggestive way.[2] The majority of these images feature young girls with barely developed breasts wearing flimsy G-strings in blatantly sexual poses, often lying atop a bed, straddling a chair, or pushing up against the floor or wall. In one such image, a prepubescent girl is shown in split panels wearing high-heeled red patent leather boots that are laced to her knees. On the rights hand side panel, she is standing atop a red, white, and blue-colored banner, provocatively tugging on a skimpy, flag-themed G-string. Her legs are slightly bent, and she has hyper-extended her torso. On the left-hand panel of the same image, the girl is shown in a side-profile bending over with her hands on her knees, glancing provocatively at the viewer. The following captions are superimposed on the images, respectively: “YOU WANT SOME PUSSY, HUH?!” and “WHITE BITCHES GIVE HEAD!”
Another split-image shows a young girl draped across a bed, her hand resting on her exposed buttocks, and pubic hair visible through the G-string. To the left of this image, the same girl is shown in a short skirt and top standing with her legs parted and her hands are on her hips edging up her skirt. The superimposed captions say: “GET SOME PUSSY!” and “WHITE GIRLS GIVE HEAD!,” respectively.
Indeed, most of the images include aggressive, graphic commands like “POUND HER PUSSY!,” “100% PUSSY PLUNGING FUN!,” “PLOW HER PUSSY!!,” “MAKE THIS BITCH GIVE HEAD UNTIL HER FACE TURNS RED!,” and “THIS GIRL LOVES SUCKING COCK!” The folder and file names for these images are equally graphic and sexually charged, consisting of a series of keywords such as “STUPID YOUNG GIRLS IN THONGS,” “9yo lOyo llyo,” “White Girl Jailbait BANG,” “Ass in a THONG,” “kdquality pedo,” and “preteen pussy.”
The question is: would a reasonable ser-vieemember have fair notice that possession of these images was of a nature to discredit the armed forces? Answer: Yes.
II. Fair Notice
The majority and the dissent agree that “conduct that is not specifically listed in the *6 [Manual for Courts-Martial ] may be prosecuted under Article 134.” Saunders, 59 M.J. at 6 (citing Vaughan, 58 M.J. at 31; see Manual for Courts-Martial, United States pt. IV, para. 60.c(6)(c) (2012 ed.) (MCM) (permitting the use of specifications not listed in the MCM to allege offenses not listed in paras. 61-113 as offenses under clause 1 or 2 of Article 134, UCMJ)). Moreover, “Manual provisions describing offenses cognizable under Article 134 are merely illustrative.” United States v. Johnson, 14 M.J. 1029, 1031 (A.C.M.R.1982), aff'd, 17 M.J. 251 (C.M.A.1984) (citing United States v. McCormick, 12 C.M.A. 26, 28, 30 C.M.R. 26, 28 (1960)).
We also agree that it is an elemental principle of due pi’ocess that a defendant charged with an Article 134, UCMJ, service-discrediting offense must have fair notice that his conduct was punishable. Vaughan, 58 M.J. at 31 (citing United States v. Bivins, 49 M.J. 328, 330 (C.A.A.F.1998)). Fair notice can be actual notice, as in the case of a highway speed limit sign. It can also be constructive in nature. As reflected in the truism that “ignorance of the law is no defense,” fair notice and actual notice are not coterminous. The law provides fair notice where a reasonable person reading the law and any supporting sources would have knowledge that the conduct was prohibited.
Notice derives primarily from the elements of the offense itself. For Article 134(2), UCMJ, the elements are:
(1) That the accused did or failed to do certain acts; and
(2) That, under the circumstances, the ac- • cused’s conduct was ... of a nature to bring discredit upon the armed forces.
MCM pt. IV, para. 60.b.
“Discredit” is defined in the MCM as “to injure the reputation of.” Id. at para. 60c(3). The MCM further explains, “[t]his clause of Article 134 makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem.” Id.
At the same time, it is well settled at this Court and the service appellate courts that one can apply common 'Sense to determine whether a reasonable military member had fair notice that conduct fell within the reach of Article 134, UCMJ. One such court held that, “[ejommon sense, if nothing else, tells us that appellant’s conduct constitutes a violation of Article 134, notwithstanding the fact that paragraph 213/ of the MCM does not describe the [specific] offense.” United States v. Gipson, 16 M.J. 839, 841 (N.M.C.M.R.1983).
Likewise, and most recently, in United States v. Ashby, this Court held that “common sense supports the conclusion that [Appellant] was on notice that his conduct violated the UCMJ” and that there was “no doubt that [Appellant], as a seasoned officer and aircraft pilot, understood that under the circumstances his actions would reflect poorly upon him as an officer and would discredit the service.” United States v. Ashby, 68 M.J. 108, 119 (C.A.A.F.2009). In that case, this Court held that the Appellant — who was the pilot of an EA-6B Prowler aircraft that struck weight-bearing cables of a cable car killing twenty people — had reasonable notice that taking a videotape from the aircraft, hiding it in his quarters, and eventually providing the tape to a colleague to “get rid of it” was both service discrediting and conduct unbecoming an officer and a gentleman. Id. at 118. In fact, this Court determined that Appellant’s conduct in “failing to hand over a videotape that he knew would have evidentia-ry value in an Italian investigation violated his official duties.” Id. at 119. Thus, this Court held that the Appellant could not claim that “he lacked notice of the criminality of his conduct by virtue of the absence of the inclusion of foreign criminal proceedings in the MCM.” Id. at 118.
Similarly, in Anderson, the Air Force Court of Criminal Appeals held:
In all these instances, before a military member can be charged with an offense under Article 133 or Article 134, due process requires that the member have ‘fair notice’ that the conduct at issue is forbidden and subject to criminal sanction.... Put another way, in the context of Article 134, the issue is whether a reasonable military member would know that his or *7 her conduct was service-discrediting (and, therefore, punishable under the Article).
United States v. Anderson, 60 M.J. 548, 554 (A.F.Ct.Crim.App.2004) (emphasis added), review denied, 60 M.J. 403 (C.A.A.F.2004).
Moreover, there is extensive ease law supporting common sense and reasonableness as grounds for fair notice. See United States v. Sullivan, 42 M.J. 360, 366 (C.A.A.F.1995) (“Finally, we turn to appellant’s claim that he was not on fair notice that the conduct alleged in the amended specification was criminal. In our view, any reasonable officer would know that asking strangers of the opposite sex intimate questions about their sexual activities, using a false name and a bogus publishing company as a cover, is service-discrediting conduct under Article 134.”); United States v. Hartwig, 39 M.J. 125, 130 (C.M.A.1994) (“Any reasonable officer would recognize that sending sexual over-toes to a stranger ... risk[s] bringing disrepute upon himself and his profession.”); United States v. Frazier, 34 M.J. 194, 198-99 (C.M.A.1992) (“Accordingly, we conclude that a reasonable military officer would have no doubt that the activities charged in this ease constituted conduct unbecoming an officer.”). See also United States v. Weller, No. NMCCA 201100043, 2012 CCA LEXIS 154, 2012 WL 1514821 (N.-M.Ct.Crim.App. Apr. 30, 2012), review denied, 71 M.J. 380 (C.A.A.F.2012) (“The crime of negligent discharge of a firearm is meant to address a failure to follow well-established safety precautions as well as common sense, the result being a weapons discharge that threatens good order and discipline or tends to discredit the armed forces.”); United States v. McCreight, 39 M.J. 530, 533-34 (A.F.C.M.R.1994), aff'd, 43 M.J. 483 (C.A.A.F.1996) (“Customs of the service provide notice to an officer of what limits exist on relationships with enlisted subordinates when other regulatory or statutory guidance does not. Customs of the service also provide notice to officers of what behavior is unbecoming an officer and gentleman, prejudicial to good order and discipline, and service discrediting.”); United States v. Johnson, 39 M.J. 1033, 1037-38 (A.C.M.R.1994) (“Some acts are inherently prejudicial to good order and discipline or discrediting to the service. Others require an assessment of the circumstances surrounding the commission of the offense in making the determination. Generally, offenses involving moral turpitude are inherently prejudicial or discrediting.” (internal citations omitted)). United States v. Guerrero, 33 M.J. 295, 297 (C.M.A.1991) (agreeing with the appellate court that “it is reasonable to assume that [Appellant] was well aware that there were appropriate standards of civilian attire to which sailors must adhere” and that the “UCMJ had been explained to appellant, so that he had ‘fair notice’ that conduct prejudicial to good order and discipline in the armed forces and all conduct of a nature to bring discredit upon the armed forces were punishable”).
Where, however, the elements and common sense would not put a reasonable person on notice as to what is proscribed, some additional source of notice is required before a person can be said to be on fair notice that conduct is subject to criminal sanction. In the context of Article 134, UCMJ, this is of particular concern given its potential breadth and indeterminate nature. On this basis, this Court looked to additional sources of notice beyond the elements in two recent cases — Vaughan and Saunders — because it was not obvious and apparent from the elements of Article 134, UCMJ, alone whether the conduct was prohibited.
In Vaughan, the defendant was charged with leaving her forty-seven-day-old baby unattended in a crib at an off-base residence while she spent nearly six hours at a night club located ninety minutes away. Vaughan, 58 M.J. at 30. This Court affirmed the accused’s conviction of child neglect despite her claim that she did not have fair notice that her conduct [of child neglect] was subject to criminal sanction under Article 134, UCMJ, and that she did not receive proper notice as • to the specific elements of the offense. Id. at 35-36. In holding there was sufficient notice, we identified additional potential sources of notice beyond the elements including the “MCM, federal law, state law, military case law, military custom and usage, and military regulations.” Id. at 31. Writing for the *8 majority, I drew upon Department of Defense (DOD) regulations to give contextual support for “military custom and usage” involving the care of dependents. Id. However, Vaughan also noted with care that these were potential sources of notice, not required sources of notice. Id. at 33. Six months after Vaughan, this Court elaborated in Saunders that it “did not require notice of specific elements set down in writing before the offense is committed, only ‘fair notice’ that conduct was criminal... .[s]uch notice could arise from military custom and usage, which is clearly not defined by elements or with mens rea specificity.” 59 M.J. at 8.
In the present case — in addition to fair notice through the elements and common sense — we are also able to infer Appellant had notice through his conduct. Specifically, after he was reported by a friend and member of the unit, Appellant contacted a friend and member of his unit to request that he destroy these images along with others in his collection. Appellant attempted to destroy the evidence not once, but twice. The second time was while he was in custody. Finally, he did not raise the issue of notice until he sought reconsideration before the CCA. In other words, he was on fair notice until this Court’s decision in Barberi raised for the first time the possibility that possession of these types of images did not meet the definition of pornography under the Child Pornography Prevention Act (CPPA).[3]
Accordingly, the fair notice question in this case is as follows: Is it obvious and apparent based on the elements and common sense whether Article 134, UCMJ, would apply to the charge and images? Or are the charge and images of a sort requiring some additional source of fair notice? I take the former position based on the nature of the images described above. The majority takes the latter position.
III. Implications
The majority’s rigid and formalistic approach to fair notice in the context of Article 134, UCMJ, if sustained, is problematic for three reasons.
First, it transforms the test for fair notice by focusing exclusively on the words contained in a specification rather than the underlying conduct they describe. Thus, the majority does not address the pictures in this ease at all, but looks only to the specification’s use of the term “sexually suggestive” to determine that Appellant was not on fair notice that his conduct was of a nature to discredit the armed forces. However, notice is a question that can only be answered by considering Appellant’s conduct in the context of the specification; that is, by looking at the images. In short, the question is not whether an accused is on fair notice that possession of sexually suggestive pictures is an offense. After all, much if not most advertising — including advertising geared towards children — might fall into this description. The question is whether the possession of these images as described in the specification as sexually suggestive is an offense. Yet there is no analysis of the pictures by the majority.
Second, the majority fails to consider whether and how the elements of the offense and common sense as applied to these images would or would not have placed a reasonable member of the armed forces on notice that his conduct was service discrediting. Indeed, the elements of the offense and common sense are the threshold sources of fair notice, before one turns to the additional sources of notice described in Vaughan and Saunders. These cases provide a possible reference point to other sources such as military custom and usage; they do not artificially curtail all future considerations of custom and usage to a prefabricated set of formalized, regulatory guidance. To emphasize, the list in Vaughan and Saunders was inclusive and not collectively exhaustive such that no other source might exist, including — most *9 significantly — plain English understanding of the elements of the offense and common sense.
However, the majority appears to require a specific reference in a specific regulation to the specific conduct — here, a graphic description of which sexually suggestive images are prohibited and which portray children as sexual objects. That is not what Vaughan and Saunders — or the extensive history of Article 134, UCMJ, case law, for that matter — require. In short, an accused is entitled to “fair notice” of the criminality of conduct charged as service discrediting under Article' 134, UCMJ, but this does not require published notice of the precise wording of the elements as applied in each and every context. Saunders, 59 M.J. at 9. “Such a view is consistent with Article 134’s purpose of capturing service discrediting conduct that might not have been foreseen by the drafters of the UCMJ or those charged with its subsequent implementation in changing and complex military circumstances.” Id.
More fundamentally, however, such a view defeats the disciplinary purpose of Article 134, UCMJ. The' Supreme Court “has long recognized that the military is, by necessity, a specialized society separate from civilian society.” Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). At a basic level, this is because the purpose of the military is to fight the nation’s wars and “[n]o question can be left open as to the right to command in the officer.” Id. at 744, 94 S.Ct. 2547 (quoting United States v. Grimley, 137 U.S. 147, 153, 11 S.Ct. 54, 34 L.Ed. 636 (1890)). And “[wjhile the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections.” Id. at 758, 94 S.Ct. 2547. Accordingly, “[sjpeech that is protected in the civil population may nonetheless undermine the effectiveness of response to command. If it does, it is eonstitu-tionally unprotected.” Id. at 759, 94 S.Ct. 2547 (citations omitted).
This Court recently applied this rationale to an Article 133, UCMJ, 10 U.S.C. § 933, violation governing conduct unbecoming to an officer which functions as a companion to Article 134, UCMJ.[4] In broadly interpreting Article 133, UCMJ, we held conduct that “disgraces [an officer] personally or brings dishonor to the military profession affects his fitness to command the obedience of his subordinates so as to successfully complete the military mission.” United States v. Forney, 67 M.J. 271, 275 (C.A.A.F.2009). Finding that conduct “need not be a violation of any other punitive article of the Code, or indeed a criminal offense at all, to constitute conduct unbecoming an officer,” this Court found the accused’s conduct of downloading virtual child pornography to be a violation of. Article 133, UCMJ, even though “possession of virtual child pornography may be constitutionally protected speech in civilian society.” Id. I argue this approach is applicable to Article 134, UCMJ, as well.
To be sure, Article 134, UCMJ, is not a “catchall as to make every irregular, mischievous, or improper act a court-martial offense.” United States v. Sadinsky, 14 C.M.A. 563, 565, 34 C.M.R. 343, 345 (1964). But it does serve to allow commanding officers the flexibility in dealing with improper behavior from subordinates. For example, the accused in Sadinsky argued that he did not have fair notice that jumping from the ship into the sea was violative of Article 134, UCMJ. The majority of the board of review members agreed that the specification did not “allege facts bringing the accused’s act within the prohibition of some order, regulation, or statute limiting conduct or defining the offense sought to be charged” thus concluding the specification failed to allege a cognizable offense. 14 C.M.A at 566, 34 C.M.R. at 346. But this Court disagreed. *10 In doing so, we noted that “[t]o superimpose a requirement that conduct be prohibited by some order, regulation, or statute in order to fall within the proscription of the first category of Article 134 would be contrary to the clear and fair meaning of its terms.” Id. (emphasis added). Moreover, “[i]f certain acts fell within other specific articles of the Code, they would, manifestly, be ‘specifically mentioned’ elsewhere in the Code, and be outside the scope of the General Article.” Id. This Court concluded, “applying such a standard would effectively emasculate the very essence of Article 134.” Id.
Nearly fifty years later, we are at risk of doing just that. As such, I respectfully dissent. There was sufficient notice using the elements and common sense for a reasonable member of the armed forces to understand such conduct to be service discrediting.

. Courts examining these questions have struggled to define the term "child erotica” as well as to define the reach of the law in civilian context with respect to "child erotica.” I would too. However distasteful the concept of "child erotica,” the term covers such a wide range of possible images that it would be hard to pinpoint just what is included. Moreover, in the context of the broader child pornography field that is both highly regulated and nuanced as a result of Supreme Court case law, it would be hard to determine in the abstract what "child erotica” would violate Title 18, or for that matter Article 134, UCMJ, even if one could agree on what the term meant. But that is riot this case.

. Three images were duplicates.

. In Barberi — before the MCM codified the definition — the majority qualified its holding by conceding that, "[cjharges for the possession of child pornography could be brought pursuant to clauses (1) or (2) of Article 134 without reference to the definitions laid out in the CPPA, thereby creating a completely different set of elements required for conviction.” United States v. Barberi, 71 M.J. 127, 131 (C.A.A.F.2012).

. In fact, the drafters of the UCMJ noted that the clause "conduct of a nature to bring discredit upon the armed forces” was essentially added to the general articles after World War I by the Judge Advocate.General of the Army who urged its inclusion so as to try retired noncommis-sioned officers and soldiers in the same manner as officers would be tried under Article 133, UCMJ, for conduct unbecoming an officer. Article 134, UCMJ; Charles L. Decker et al., Dep’t of Defense, Legal and Legislative Basis, Manual for Courts-Martial, United States 294-95 (1951).