UNITED STATES, Appellee

v.

THOMAS L. PATRICK, Private E–1, U. S. Army, Appellant

2 USCMA 189, 7 CMR 65

No. 799

Decided February 13 1953

Ernest S. Merrill, Esq., and 1ST. LT. Thomas E. Cole, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused was convicted by general court-martial, convened at Camp Polk, Louisiana, of bigamy, in violation of Article of War 96, 10 USC § 1568, and of eight specifications of forgery, violations of the Uniform Code of Military Justice, Article 123, 50 USC § 717. The

findings were approved by the convening authority and affirmed by a board of review. The sentence, as finally approved, including clemency granted by the Secretary of the Army, extends to dishonorable discharge, total forfeiture of pay and allowances, and confinement at hard labor for five years. Upon grant of petition for review, this Court undertook to consider the following assignments of error:

1. The law officer's failure to disclose an alleged ground for challenge of himself for cause.

2. The law officer's failure to instruct the court as to the elements of the offense of forgery.

3. The sufficiency of the evidence to support the conviction of bigamy.

Upon argument at the bar of this Court, the Government conceded error and prejudice to appellant in the law officer's failure to instruct on the elements of forgery. Thereafter appellant elected to abandon his contention of prejudicial error asserted to flow from the suggested failure of the law officer to disclose a possible ground for challenge of himself for cause. In eliminating these matters from further consideration—as we do—we are not to be understood as accepting blindly admissions of error by the Government, or the abandonment of arguments by appellate defense counsel. Indeed, we have examined these issues with care, and have concluded that they were properly disposed of by action of counsel. We greatly appreciate their candor in these particulars, and genuinely hope that this quality may be evinced by others to a point where the argument of needless issues to this Court will be prevented.

We turn then to the remaining question—namely, whether the record reflects sufficient evidence to support the conviction of bigamy. There is no definition of bigamy in the punitive articles of the Uniform Code of Military Justice, 50 USC §§ 551–736. However, the section on forms contained in the Manual for Courts-Martial, United States, 1951, describes the offense in terms substantially in accord with those of the common law—that is, that the accused entered into marriage, having at the time a lawful spouse then living. Manual, supra, App 6c, p 489. In this case the accused was charged with having contracted marriage with one Willie Manago on March 5, 1951, at which time he was lawfully wedded to one Yvonne Broussard, then living—the marriage to the latter having been celebrated on July 20, 1950.

The asserted marriage to Willie Manago on March 5, 1951, was established conclusively by documentary evidence as well as by oral testimony. Consequently, defense made no attempt to controvert it here, but attacked only the evidence bearing on the marriage alleged to have been entered into with Yvonne Broussard on July 20, 1950. That evidence is entirely documentary, consisting of three prosecution exhibits. Exhibit 1 is a duly certified photostatic copy of a marriage license issued in Chicago, Illinois, to "Thomas Patrick Jr." of Chicago and "Yvonne Broussard" of Chicago. The same document discloses that "Thomas Patrick Jr." and "Yvonne Brossard" were married at Chicago July 20, 1950, by the "Rev. J. H. Henderson." Prosecution Exhibit 2 is a Certificate For Increased Allowances signed by accused as "Thomas L. Patrick," and dated August 15, 1951. In this paper he certified that he was entitled to increased allowances because of the dependency of his "Lawful Wife," named "Yvonne Patrick," whom he had married July 20, 1950, and whose address was "4733 Lanley Ave., Chicago, Ill." Exhibit 3 is an "Allotment Authorization" signed by accused, dated August 16, 1951, authorizing payment of an allotment to his "Wife" named "Yvonne Patrick," of "4733 Lanley Ave. Chicago, Ill." It is to be noted that these documents were dated respectively August 15 and 16, 1951—some five months *after* March 5, 1951, when accused had. married Willie Manago.

The existence of a marriage is a fact which may be proved "like any other fact, by the admissions of █ the defendant, or by circumstantial evidence." Matz v. United States, 158 F2d 190,

191–192 (CA DC Cir) ; Miles v. United States, 103 US 304, 311, 26 L ed 395, 383. We have in this case the statements of accused in Exhibits 2 and 3, made August 15 and 16, 1951, that he had a wife named "Yvonne" living in Chicago whom he had married July 20, 1950. Regarding these assertions as admissions—because they were of an incriminatory nature in view of accused's marriage on March 5, 1951, to Willie Manago—they may not be relied on as proof of the first marriage in the absence of independent corroborative evidence that this marriage had "probably" been contracted. Manual, supra, paragraph 140a. Prosecution Exhibit 1, the duly authenticated copy of the marriage license, together with the clergyman's affidavit that he had officiated at the marriage, was admissible as a document within the "Official records" exception to the hearsay rule. Manual, supra, paragraph 144b. It recites that "Thomas Patrick Jr." and "Yvonne Broussard," both of Chicago, Illinois, were married in that city July 20, 1950. Defense contends that the discrepancy between the name of accused, "Thomas L. Patrick," and that of the male contractor set out in Exhibit 1, "Thomas Patrick Jr.," together with a certain apparent discrepancy between statements of his age, destroys the significance of Exhibit 1, in that it was not made to appear that accused and "Thomas Patrick Jr." were one and the same person. However, giving these minor differences greater weight than they merit, the similarity between the contents of Exhibits 2 and 3, on the one hand, and those of Exhibit 1, on the other, is overwhelming. This similarity exists not only as to name of accused, but as well to the name of the young woman he is alleged to have married, and the date on which the marriage is alleged to have been celebrated. There is indeed sufficient evidence to support a conclusion that the marriage deposed by accused in Exhibits 2 and 3 had—at the very least—"probably" been contracted. The Manual requires no more to corroborate the admissions of Exhib-

**192**

its 2 and 3. We conclude, therefore, that the fact of a prior marriage by accused is supported by sufficient evidence in the record.

The question remains whether sufficient evidence was adduced by the prosecution that accused's first wife, Yvonne, was living when he took the second, Willie, on March 5, 1951. There is a plethora of decisional law pertaining to proof of the fact that an alleged earlier spouse was living at the time a second marriage was contracted. Much is said about presumptions available for indulgence—and distinctions are frequently drawn in the premises between civil actions and criminal prosecutions. As one might anticipate in the nebulous sphere of presumptions, the authorities are not in complete harmony. However, in so far as we have been able to discern, the general rule—or at least the rule we deem most firmly rooted in common sense—is that in criminal prosecutions for bigamy the presumption of innocence, supplemented by the presumption of validity attendant upon the second marriage, negative or neutralize the presumption of continued life of the first spouse—so that the question resolves itself, not into a battle of conflicting presumptions, but into the usual problem of proof of fact uncomplicated thereby. People v. Feilen, 58 Cal 218; Squire v. State, 46 Ind 459; Hull v. State, 7 Tex App 593; Dixon v. People, 18 Mich 84; Dunlap v. State, 126 Tenn 415, 150 SW 86; Christian v. State, 174 Ark 357, 295 SW 368; see Prentis v. McCormick, 23 F2d 802 (CA 6th Cir). Whether the first spouse of accused was alive on the date of his marriage to the second is a fact which may be proved—as might the existence of the first marriage itself—like any other fact. That is to say, either direct testimony, circumstantial evidence, or admissions may properly be used. In Exhibits 2 and 3, dated August 15 and 16, 1951, respectively, the accused—some five months after his marriage to Willie Manago, be it noted—necessarily represented that

his "Lawful Wife," Yvonne, was then alive, and a fortiori that she was alive on March 5, 1951. Viewing this representation as an admission—which, in the setting of this case, it was—it too must be supported by corroborative evidence that Yvonne was "probably" alive on March 5, 1951. Manual, supra, paragraph 140a. The only evidence bearing on this question—and it is circumstantial in character—is found in Exhibit 1, which establishes that Yvonne was alive on July 20, 1950, *something less than seven months earlier*. This evidence is in no sense worthless by virtue of the fact that it is wholly circumstantial. Our task is simply to determine whether it is enough to corroborate the admission of accused. We think it clearly sufficient to support a conclusion that Yvonne was "probably" alive on March 5, 1951. This belief is predicated in the main on Yvonne's distinctly youthful age, plus the relative brevity of the lapse of time between July 20, 1950, and March 5, 1951. If the period involved were two days we would entertain no slightest doubt in the matter. But what of two weeks? Or two months? Or something more than six months, as here? Our conclusion is based on experience and the inferential practices of ordinary people in dealing with the everday affairs of social and business life.

Although we recognize that this process smacks of indulgence in the presumption of continued life, such is not at all the case in terms of valid legal distinction. In view of the admission of accused that Yvonne was alive on March 5, 1951, all that is required is "other evidence, either direct or circumstantial" that she was "probably" alive on that date. Manual, supra, paragraph 140a. Relying on Exhibit 1 for proof that Yvonne was *probably* alive on March 5, 1951, differs decidedly, of course, from inferring, on the basis of that exhibit, that she was *in fact* alive on that date. Our ultimate conclusion, therefore, is that we cannot say as a matter of law that there was insufficient evidence that accused's first wife was alive when the second was taken. This is based on his admissions in Exhibits 2 and 3, as corroborated by the contents of Exhibit 1.

In our view, all of the necessary elements of bigamy were established by sufficient evidence. Accordingly, the decision of the board of review with respect thereto is affirmed. In view of the Government's well-taken confession of error and prejudice in connection with the eight forgery specifications, the decision of the board of review pertaining to them must be reversed. The record is remanded to The Judge Advocate General for rehearing on the forgery specifications, or for such other action as he may deem appropriate and not inconsistent with the views expressed herein.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.