UNITED STATES, Appellee

v

ALLEN L. WILLE, Sergeant First Class, U. S. Army, Appellant

9 USCMA 623, 26 CMR 403

No. 11,353

Decided September 19, 1958

*First Lieutenant Herbert R. Brown* argued the cause for Appellant, Accused. With him on the brief was *Captain Arnold I. Melnick.*

*First Lieutenant Jon R. Waltz* argued the cause for Appellee, United States. With him on the brief was *Major Thomas J. Nichols.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This is a bizarre case on the facts, and unusual in the allegations of error.

The accused, a 29-year-old soldier, met a woman in the Fort Bliss Noncommissioned Officer's Club in the Spring of 1957. She told him that she was a divorcee. About three months later they were married. Before the week was over, she informed him that she was already married to an Air Force Major and was the mother of five children. Two days later, in response to a telephone call from the Major, they went to his home. They arrived about 2:30 a.m. An argument developed. The accused produced a loaded pistol, cocked it, and pointed it at the Major. For about one and one-half hours the Major pleaded for the accused and his "spouse" to go, and to leave him with the children. At his wife's suggestion, the Major signed a statement, dictated by the accused and the wife, which represented that he would not contest a divorce; would not press charges against the accused and his wife; and that he would marry his sister-in-law who would bring up the children. The

accused's father was then called on the telephone. The Major was compelled to read the statement and tell the father that "everything was finally settled." A few days later the accused was served with a charge sheet setting out four charges. These were: extortion, assault with intent to murder, adultery and "wrongfully and bigamously" entering into a marriage with the named woman "knowing that at the time" she had "a lawful husband then living."

In due course the charges were investigated by Lieutenant Colonel M. B. Birdseye, Jr. At the investigation, the accused was represented by two civilian attorneys and an appointed Judge Advocate General Corps officer. After completing his investigation, the investigating officer recommended that the "bigamy" charge be dropped because the available evidence indicated the accused "had an honest, reasonable belief" the woman he married had been properly divorced. He also recommended elimination of the adultery specification because "no evidence exists to show" that the accused "engaged in

sexual intercourse promiscuously or in the public view." However, in considering the report of investigation, the staff judge advocate disagreed with the recommendations of the investigating officer. In his pretrial advice to the convening authority he referred to the recommendations, but he himself recommended trial on all charges.

About two weeks after the date of the staff judge advocate's advice, the charges were referred for trial. However, instead of the original four charges there were only two. One was extortion; and in place of the specification alleging assault with intent to murder was one alleging assault with a dangerous weapon. The "bigamy" and the adultery charges were missing. Several weeks later the charges came on for trial. The accused was represented by the same two civilian lawyers who had represented him at the pretrial investigation and by two appointed defense counsel. The accused entered a plea of guilty. The meaning and effect of the plea were explained to him by the law officer but he persisted in his plea. Nevertheless the law officer held an out-of-court hearing before accepting the plea. In the hearing, the law officer learned that the accused had, through his civilian and military counsel, offered to plead guilty to extortion and assault with a dangerous weapon and that the offer had been reviewed and approved by an officer in the judge advocate general's section. The following colloquy was then had:

"LO: [After admitting as an appellate exhibit the accused's offer to plead guilty and the review of the same by the Judge Advocate General Corps officer] . . . sergeant why are you pleading guilty?

"ACCUSED: Well the offenses I have been charged with actually took place.

"LO: In other words you are guilty and that is why you are pleading guilty?

"ACCUSED: Yes, sir.

"LO: Very well, the plea will be accepted and this out of court hearing will terminate at this point."

When court reconvened, the trial proceeded to findings and sentence. The record of trial was duly reviewed by the convening authority and the findings were affirmed. On appeal before the board of review, the accused contended that "unwarranted" charges were brought and used against him, in violation of a Department of the Army Message cautioning against unreasonable multiplication of charges, in order "to induce . . . [him] to plead guilty." He maintained that the recommendation to accept his plea plainly shows there was insufficient evidence to support a conviction for adultery, "bigamy" and assault with intent to murder. In response to the assignment of error, the Government conceded that unsupported charges were utilized to induce the accused to plead guilty. It asked the board of review to cure the error by reassessing the sentence. In its opinion, the board of review said: "Among other errors, appellant urges that other charges, not supported by evidence, were utilized to induce the accused to plead guilty. Appellate Government counsel has conceded this error and we concur." It modified the sentence by reducing the period of confinement by six months. The accused then appealed to this Court. He argues that since the board of review determined the plea was induced by unwarranted charges, it could cure the error only by vacating the sentence and setting aside the findings of guilty. See United States v Welker, 8 USCMA 647, 25 CMR 151; Euziere v United States, 249 F2d 293 (CA 10th Cir) (1957).

Government counsel before the board of review plainly did not understand the significance of the accused's contention that his plea was induced by unlawful means.[1] Apparently, Government counsel construed the accused's allegation of error as one concerning merely a multiplication of charges. However, the contention was deeper and more important than that; it challenged the validity of the findings of guilty them-

---

[1] It is not contended that the accused's plea was based upon the convening authority's promise of leniency in regard to the sentence. We, therefore, pass over a more detailed analysis of the accused's offer to plead guilty.

selves. A plea of guilty must be freely and voluntarily entered into by the accused. If it is improvident, or the result of coercion or undue influence, it must be set aside. United States v Welker, supra; United States v Hamill, 8 USCMA 464, 24 CMR 274; Shelton v United States, 242 F2d 101; 246 F2d 571 (CA 5th Cir) (1957), reversed on concession of error by the Government, 356 US 26, 2 L ed 2d 579, 78 S Ct 563.

A review of the proceedings discloses no connection whatever between the number and justifiability of the charges and the plea of guilty. At the pretrial investigation, the accused was represented by civilian and military lawyers. It was the accused, acting through his counsel, not the prosecution, who submitted the offer of the plea of guilty. When informed of the meaning and effect of the plea at the trial, the accused said, in the presence of his lawyers, that he wanted to plead guilty because he was guilty of the charges which had been referred to trial. And the evidence upon which the charges are based leaves absolutely no doubt about the fact of his guilt. There is not a trace of evidence to the effect that the staff judge advocate disagreed with the recommendations of the investigating officer for the express purpose of using the charges to force the accused to offer to plead guilty to some of them in exchange for dismissal of the others. On the contrary, except in one respect, the position taken by the staff judge advocate was thoroughly justified.

As previously noted, there were originally four charges filed: extortion, assault with intent to commit murder, adultery and "bigamy." The investigating officer recommended a general court-martial on the extortion and assault with intent to murder charges. The evidence considered by him would have supported both charges. Thus, the Major had testified that when he told his wife and the accused to terminate their relationship and he wouldn't press charges, the accused asked "Is that it?" Assured that it was, he pulled out a pistol, cocked it, and remarked: "Well, there's nothing left to do, is there?"

**626**

The Major began to promise "anything and everything under the sun" to talk the accused "out of it," while his wife kept urging the accused to "shoot him" because he wouldn't keep his word. The Major also testified that the agreement not to prosecute and to marry his sister-in-law was obtained from him at gun point. The staff legal officer who reviewed the accused's offer to plead guilty to the lesser offense of assault with a dangerous weapon did not dispute the sufficiency of the evidence to support these charges. He thought it would be "improbable" that the court-martial would convict on the intent to murder charge because "the accused did not actually shoot the Major." Significantly, he did not say the evidence was insufficient; all that he did was attempt to guess at what the court-martial might or might not do. Others could legitimately guess differently.

As far as the charge of adultery is concerned, the investigating officer did not dispute the fact of adultery. The Major had testified before him that he had not had sexual intercourse with his wife for approximately seven months, but she had informed him she was two months pregnant; the putative father was the accused. Additionally, the accused, in a statement to a Criminal Investigations Division agent, had admitted sexual relations with the Major's wife and that he knew from a blood test she was pregnant; he also admitted that they were married on July 20, 1957, in New Mexico. The investigating officer merely believed that since the acts between the parties had not been promiscuous or "in the public view" the charge should not be prosecuted. Properly, the staff judge advocate could take a different view of the advisability of prosecution.

Left for consideration is what is called the "bigamy" charge. The specification obviously does not allege "bigamy" in the correct and technical sense. Bigamy is the contracting of a second marriage by one who already has a lawful spouse living. United States v Patrick, 2 USCMA 189, 7 CMR 65. Here it is not alleged, nor does it ever appear to have been contended, that the accused was previously married. Mani-

festly, the specification is insufficient for a conventional charge of bigamy. But that is not to say the pleader did not believe the accused's conduct was nonetheless so discrediting to the armed forces as to constitute a violation of Article 134 of the Uniform Code of Military Justice, 10 USC § 934. The fact of marriage was undisputed. The only question was whether the accused knew the woman he married was already married. The investigating officer concluded that from the evidence before him, the accused "had an honest, reasonable belief" that the woman was divorced. The staff judge advocate reached a different conclusion. The evidence is favorable to the accused. But it is hardly sufficient to characterize the staff judge advocate's conclusion as "unwarranted" and as a device calculated to "induce" the accused to plead guilty to other charges. In the pretrial statement, the accused maintained he met the woman in late April or early May 1957. She told him she was married but was getting a divorce. Despite the fact that she was married, the accused kept company with her. Although he maintained he did not have sexual relations with her, their rapport was such that they discussed and agreed upon marriage. Then she told him the divorce was final. She also told him she was having a property dispute with her husband which was not yet settled. As soon as the accused learned that the divorce was final, he began to have sexual relations with her. Soon they suspected she was pregnant and, in mid-July, a blood test confirmed their suspicions. A few days later they were married. The staff judge advocate could conclude that a court-martial might find that the accused's belief that a final decree of divorce had been obtained was more the result of his desire to engage in intercourse than faith in the woman's representation, especially since she told him she was still having difficulty with her husband about the property settlement. Even one unlearned in the law and in matrimonial matters might have been moved to ask how it came about that the divorce decree was final before an agreement on a division of the property had been concluded. We are not suggesting that a court-martial might not have acquitted the accused of this offense. But we cannot conclude that the charge was so baseless as to justify an inference that the staff judge advocate had an improper motive in recommending it be referred to trial.

The staff judge advocate did make one mistake in his pretrial advice. He described the specification as one alleging "bigamy." We have pointed out that the specification did not allege that offense because the accused himself was not already married. There is no evidence, however, that the misdescription was a deliberate attempt to deceive the convening authority or to coerce the accused. If anything, the description is suggested by the language of the specification. Unquestionably, the staff judge advocate should have been more careful in his analysis of the nature of the offense and the penalty imposable therefor. But negligence is a far cry from the kind of baneful calculation charged by the accused.

In sum, the evidence overwhelmingly disproves the accused's assignment of error before the board of review. Consequently, the concession by the Government was wrong, and it should not have been accepted by the board of review. For the same reason, the conclusion reached by the board of review is not supported by any evidence. Since the conclusion does not constitute a finding of fact supported by evidence in record, it is not binding upon us. See United States v Moreno, 6 USCMA 388, 20 CMR 104; United States v Bunting, 6 USCMA 170, 19 CMR 296. The board of review was mistaken, but we need not remand the case to it for correction of its error. The mistake resulted in a benefit to the accused. Consequently, he has no cause to complain.

The findings of guilty and the sentence are affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (dissenting):

I dissent.

We granted accused's petition for review upon the following issue, which is not stated in the majority opinion:

**627**

"Whether the board of review was correct in holding, after finding the guilty plea was improperly induced, that it could cure the same by reassessing the sentence."

The majority opinion adequately and correctly answers the granted issue by stating:

". . . A plea of guilty must be freely and voluntarily entered into by the accused. If it is improvident, or the result of coercion or undue influence, it must be set aside. United States v Welker, . . . [8 USCMA 647, 25 CMR 151]; United States v Hamill, 8 USCMA 464, 24 CMR 274; Shelton v United States, 242 F2d 101; 246 F2d 571 (CA 5th Cir) (1957), reversed on concession of error by the Government, 356 US 26, 2 L ed 2d 579, 78 S Ct 563."

The majority opinion concludes that accused's plea was not improperly induced inasmuch as the evidence of record could support the dropped charges.

The jurisdiction of this Court is limited to questions of law. See United States v Thompson, 2 USCMA 460, 9 CMR 90; United States v Sell, 3 USCMA 202, 11 CMR 202. When supported by evidence, a factual determination by a board of review is binding upon us. See United States v Hernandez, 4 USCMA 465, 16 CMR 39; United States v Moreno, 6 USCMA 388, 20 CMR 104; and United States v Hendon, 7 USCMA 429, 22 CMR 219. Consequently, I am of the opinion that this Court lacks the jurisdiction in the present case to disturb the board of review's finding of fact, which is based upon a Government concession, that unsupported charges were utilized to induce the accused to plead guilty. In such a situation, as the majority opinion correctly points out, the guilty plea must be set aside.

Consequently, I would reverse the board of review decision.