UNITED STATES, Appellee,

v.

Christopher A. BIVINS, Airman First Class, U.S. Air Force, Appellant.

No. 97–0370.
Crim.App. No. 32044.

U.S. Court of Appeals for the Armed Forces.

Argued Jan. 13, 1998.

Decided Sept. 30, 1998.

For Appellant: *Captain Margo Stone Newton* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

COX, Chief Judge:

We granted review of two distinct issues. 48 MJ 46 (1997). First, appellant claims that, based on the facts of this case, he cannot be convicted under the general article for bigamy. Art. 134, Uniform Code of Military Justice, 10 USC § 934. Second, he claims that the Court of Criminal Appeals erred in affirming a finding of guilty of dereliction of duty as a lesser-included offense of disobeying a lawful general order. Both of those offenses arise under Article 92, UCMJ, 10 USC § 892. *See United States v. Hode,*

44 MJ 816 (A.F.Ct.Crim.App.1996). We reject both contentions and affirm.[1]

### FACTS

On the evening of May 17, 1995, appellant, a single servicemember, drove to Las Vegas, Nevada, from Los Angeles, California, with Victoria ("Vicki") Ecklund for the purpose of getting married the next day. Vicki, however, was still lawfully married to Shawn Ecklund at the time.

On the way to Las Vegas, according to Vicki's testimony, she and appellant discussed the fact that she was still married. Vicki told appellant she was afraid of getting "in trouble" for bigamy, but appellant told her "not to worry about it." The wedding accomplished and the customary documentation secured, they stayed in Las Vegas for only a few hours, then they headed back to California. Vicki returned to her mother's home that same evening.

Appellant immediately sought and obtained off-base quarters allowances. Approximately one week after the wedding, Vicki moved into appellant's apartment, where they lived together for a total of approximately one-and-a-half weeks. At that point, Vicki moved out because she believed appellant was "seeing" other women.

According to Vicki's testimony, when she informed appellant she was leaving, he attempted to convince her to stay "married" to him "a little bit longer" by offering her $100 a month as inducement. Vicki, meanwhile, was already working on a reconciliation with Shawn. According to Vicki, the reconciliation was "going really good," and she told appellant that she and Shawn were thinking about having a baby. Appellant's response was that she could have the baby on base (*i.e.*, at government expense) if she would get her military dependent's identification card.

In her testimony, Vicki acknowledged lying when she helped procure the marriage license, but she maintained that the idea was all appellant's. According to Vicki, she married appellant because she loved him at the time and thought she would eventually divorce Shawn. She believed appellant loved her too, but she also felt he was motivated to marry her quickly so he could move off base. At the time they met and later married, appellant was 19 years old, and Vicki was 25.

Appellant's version of the facts, presented indirectly through the testimony of two co-workers, was quite different. He told of deception and heartbreak. The defense theory, basically, was that appellant believed Vicki was divorced when they got married, and he married her quickly because he thought she was pregnant. Later he found out both beliefs were false.

As our jurisdiction is limited to review of legal matters, Art. 67(c), UCMJ, 10 USC § 867(c) (1994), we have no occasion on this ample record to second-guess the factfinder's conclusion that appellant knew Vicki was married.

### BIGAMY CHARGE

Bigamy is not an enumerated offense under the Uniform Code; rather, it is charged under the general article, Article 134. The elements of Article 134 are:

(1) That the accused did or failed to do certain acts; and

(2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 60(b)(1) and (2), Part IV, Manual for Courts–Martial, United States (1995 ed.).

Under Article 56, UCMJ, 10 USC § 856, the President is authorized to establish punishment limits for the various offenses chargeable under the Code, including those chargeable under Article 134. In accordance with that authorization, the President has

---

1. Apart from the bigamy and disobedience Charges here in issue, appellant pled guilty, pursuant to a pretrial agreement, to dereliction of duty, signing a false official record, wrongfully using marijuana, and indecent exposure, violations of Articles 92, 107, 112a, and 134, UCMJ, 10 USC §§ 892, 907, 912a, and 934, respectively.

A military judge, sitting alone as a general court-martial, sentenced appellant to a bad-conduct discharge, confinement for 13 months, forfeiture of $500 pay per month for 13 months, and reduction to E–1. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed. 45 MJ 501 (1996).

established the maximum punishment for "bigamy" as dishonorable discharge, forfeiture of all pay and allowances, and confinement for 2 years. Para. 65e, Part IV, Manual, *supra.*

In differentiating "bigamy" from all other forms of general article misconduct, the President has listed the elements of proof as:

(1) That *the accused* had a living lawful spouse;

(2) That *while having such spouse the accused* wrongfully married another person; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 65b, Part IV (emphasis added).

In other words, in narrowing the "certain acts" of Article 134, the President has identified a subset of misconduct—denominated "bigamy"—which warrants a particular punishment ceiling. Art. 56.

■ The primary obstacle to prosecuting a servicemember under the general article is that the servicemember must be on "fair notice" that his conduct was punishable under the Uniform Code. *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). And indeed, the proscription against bigamy has been subject to criminal law enforcement throughout our nation's history.[2]

■ What is clear from the facts of this case is that appellant cannot be sentenced for his misconduct directly under the sentence limitations of paragraph 65e because, contrary to the elements identified in paragraph 65b, he was unmarried when he married Vicki. *See United States v. Wille,* 9 USCMA 623, 26 CMR 403 (1958); *cf. United States v. Patrick,* 2 USCMA 189, 191, 7 CMR 65, 67 (1953). It remains to be determined whether appellant's conviction can nonetheless be sustained on the basis of his participation as an

aider and abettor to Vicki's paragraph 65b-type misconduct, or whether appellant's conviction can be sustained as nonparagraph 65b general misconduct to the prejudice of good order and discipline or of a service-discrediting nature.

Article 77, UCMJ, 10 USC § 877, provides:

Any person punishable under this chapter who

(1) commits an offense punishable by this chapter, or aids, abets, counsels, commands, or procures its commission; or

(2) causes an act to be done which if directly performed by him would be punishable by this chapter; is a principal.

Aiders and abettors are punishable to the same extent as perpetrators. Para. 1b(1), Part IV, Manual, *supra.*

The Government's theory at trial and before us is that, notwithstanding the elements listed in paragraph 65b, the unmarried partner to a bigamous marriage may be prosecuted as an aider and abettor to the married partner—by virtue of Article 77. To that end, the Government alleged in the specification that appellant married Vicki knowing that she was already married.

The specification reads as follows:

In that ... [appellant] did, at or near Las Vegas, Nevada, on or about 18 May 1995, wrongfully marry Victoria Lynn Ecklund, having knowledge at the time of this said marriage to Victoria Lynn Ecklund, that she had a lawful husband then living....

At the outset of trial, in opening statement, trial defense counsel signaled the defense understanding of the nature of the allegations and of the prosecution theory. He said

Your Honor, *as you will see by the charges,* the government has to prove that a certain sequence of events happened and that Airman Bivins had a certain intent in his mind, before he can be found guilty of these ... charges. Most importantly, they have to prove the following:

---

**2.** R. Posner & K. Silbaugh, in *A Guide to America's Sex Laws* 143–44 (1996), observe:

Bigamy was criminalized by statute in England in 1603, and had been punished by ecclesiastical courts before that time. It has been a criminal

offense in this country throughout its history.... While bigamy prosecutions are far less common today, they do occur sporadically on similar facts.

First, *with regard to accessory to bigamy*, they will have to prove that Airman Bivins married Victoria Ecklund on 18 May 1995, with the knowledge on that date that she was still married.

There was no defense challenge to the nature of the allegation or any contention of surprise.

Prior to final argument on findings, the military judge asked trial counsel what he thought the elements of this specification were. Trial counsel explained:

> The prosecution believes the elements to be one, that the accused knowingly married another who had a living lawful spouse. Two, that the accused knowingly married another who was still lawfully married to someone, other than the accused. Three, that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. That is based on Article 77 and 134 of the UCMJ.

Asked by the military judge if the defense concurred in those elements, defense counsel replied, "Based on the way they fashioned the charges—I mean, if that is what they intend to prove, the defense concurs." Plainly, the defense was on notice that the Government was proceeding on a principal theory.

Congress, further, has clearly authorized criminal liability for aiders and abettors, and examples of legal convictions on the principal theory in both military and civilian law are legion. What, then, could be the problem with appellant's conviction of bigamy under an aider and abettor theory?

Though not suggested to us by the parties, one argument might be the following rule of statutory construction referred to by Wharton:

> Where ... the commission of a crime *requires conduct by two persons, but only one is made punishable*, the assumption is that the legislature did not intend that the other person be punished. To punish such other person for the crime as a principal in the second degree on the theory that his participation amounted to aiding and abetting would frustrate and circumvent the apparent intent of the legislature. Accordingly, unless expressly made punishable, an unmarried person who marries a bigamist is not guilty of bigamy as a principal in the second degree[.]

1 *Wharton's Criminal Law* § 36 at 217–18 (15th ed.1993) (footnote omitted; emphasis added).[3]

In the military, however, the statute—Article 134—is not the sort that "requires conduct by two persons." As to the punishment criteria which the President decides to establish for the various gradations of Article 134 misconduct, we conclude that rules of statutory construction have no application. As no other arguments appear for avoiding the plain meaning of Article 77, we hold that there was no impediment to convicting appellant on a principal theory.

In any event, we are equally convinced that, notwithstanding the elements listed in paragraph 65b, appellant can be prosecuted as a "perpetrator" under Article 134. *See* para. 1b(2)(a), Part IV, Manual, *supra*. Any servicemember should be on fair notice that he or she cannot marry a person who is already married to another. Bigamy may not have been a common law crime, but our society has always regarded it as wrongful. 2 *Wharton's Criminal Law* § 228 at 554 (15th ed.1994); *see* I W. Russell & C. Greaves, *A Treatise on Crimes and Misdemeanors* 186 (1845); *see also* n. 2, *supra*.

Further, all states and the District of Columbia make bigamy a crime. R. Posner & K. Silbaugh, *A Guide to America's Sex Laws*

---

**3.** Wharton's rule, however, is not uniformly followed:

> Thus, in a jurisdiction where the statute creating the offense of bigamy makes no provision for punishment of one who marries an already married person, an unmarried person who marries another, knowing the latter is already married, may be convicted of aiding and abetting the commission of bigamy by the latter, although he himself is incapable of committing the offense of bigamy.

11 Am Jur 2d Bigamy § 3 at 319 (1997) (footnote omitted).

144–54 (1996). Both California and Nevada, in particular, make it a felony for an *unmarried* person to marry a married person. Cal.Penal Code §§ 281, 283, 284 (1998); Nev. Rev.Stat. Ann. §§ 201.160, 201.170 (1997). Likewise, in the military, the charge of bigamy under the general article precedes the adoption of the Uniform Code. *Patrick,* 2 USCMA at 190, 7 CMR at 66.

We have clearly defined the crime of "bigamy" consistent with the language in the Manual for Courts–Martial. In *United States v. Wille, supra,* we decided that a "charge" of "bigamy" was in fact not a "bigamy charge" because the accused was unmarried. 9 USC-MA at 626, 26 CMR at 406. This is the exact scenario presented here. But in *Wille,* we never reached the question of whether the accused could be charged as an aider and abettor, *i.e.,* as a principal under Article 77, because the bigamy charge was dropped as a result of a pretrial agreement that limited punishment to other offenses. *Id.* at 627, 26 CMR at 407. While the case *sub judice* was contested, rather than a guilty plea as in *Wille,* that case is persuasive because we suggested in *dicta* that an accused who willfully participates in a bigamous marriage could be prosecuted under Article 134, UCMJ. *Id.*

Therefore, even if we applied a Wharton-like rule to this situation and held that appellant could not be properly convicted as an accessory to bigamy, we would still affirm appellant's conviction as a perpetrator under Article 134. *United States v. Wille, supra.*

In sum, we hold that a single servicemember who knowingly enters into a marriage with a person already married can be prosecuted for conduct of a service-discrediting nature under Article 134—either as an accessory under Article 77 or directly as a perpetrator of an offense. In either event, the maximum punishment would be as prescribed in paragraph 65e, Part IV, Manual, *supra,* because this is the punishment authorized for the most closely-related offense to appellant's misconduct. RCM 1003(c)(1)(B)(i), Manual, *supra;* para. 1b(1), Part IV.

## DERELICTION OF DUTY CHARGE

█ Appellant's conviction for underage drinking arose as a result of his consumption of three to four beers while attending a private barbecue held in Air Force base housing.

Appellant pleaded guilty to a violation of Article 92(1) for violating a lawful general order, an Air Force regulation prohibiting underage drinking of alcoholic beverages. In *United States v. Hode,* 44 MJ 816 (A.F.Ct. Crim.App.), *pet. denied,* 46 MJ 113 (1996), an opinion issued after appellant's court-martial had adjourned, the Air Force court held that the regulation under which appellant was convicted was non-punitive in nature. In that case, the Air Force court affirmed a conviction of Article 92(3), dereliction of duty, because Hode had pleaded guilty to that charge, and the Government had elected to prove the greater offense of Article 92(1).

Relying on *Hode,* the Air Force court reversed appellant's conviction of violating a lawful general order and, instead, affirmed a conviction of dereliction of duty. The Air Force court's rationale was that it was properly affirming a lesser-included offense under Article 92.

We affirm appellant's conviction of dereliction of duty; however, we do so under a different rationale than that relied upon by the Court of Criminal Appeals. There are three reasons why we affirm appellant's conviction of this Charge. First, appellant was placed on notice that he was charged with a violation of Article 92, and he was charged with the most serious offense under this article. A violation of Article 92(1) carries a maximum sentence including dishonorable discharge, forfeiture of all pay and allowances, and confinement for 2 years. Para. 16e(1), Part IV, Manual, *supra.* In contrast, violating Article 92(3) merely carries a maximum punishment of a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months. Para. 16e(3)(B), Part IV.

Second, appellant admitted all of the elements of dereliction of duty in his providence inquiry. Appellant admitted that he knew

underage drinking of alcoholic beverages was not permitted and that he knew he had a duty to not engage in underage drinking. He admitted that he was drinking at the age of 19, while the law only permitted persons 21 or older to consume alcoholic beverages. *See United States v. Roach,* 29 MJ 33, 37 (CMA 1989)(Cox, J., dissenting). We hold appellant's sworn testimony sufficient to convict him of the lesser offense of dereliction of duty.

And third, dereliction of duty is an offense "closely-related" to violating a lawful general order under the facts of this case. Both offenses are charged under Article 92. Appellant knew the nature of the prohibited conduct. We hold these circumstances sufficient to uphold his conviction of the "closely-related" and less severe offense of dereliction of duty. *United States v. Epps,* 25 MJ 319, 323 (CMA 1987); *United States v. Felty,* 12 MJ 438 (CMA 1982).

For all of these reasons, we affirm appellant's conviction of dereliction of duty for underage drinking.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judges SULLIVAN, CRAWFORD, GIERKE, and EFFRON concur.