UNITED STATES, Appellee,

v.

Cadet Jeremy H. GREEN, United States Army, Appellant.

ARMY 20010446.

U.S. Army Court of Criminal Appeals.

6 June 2003.

For Appellant: Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Brian S. Heslin, JA (on brief).

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Jennifer H. McGee, JA; Captain Karen J. Borgerding, JA (on brief).

Before HARVEY, Senior Judge, BARTO, and SCHENCK, Appellate Military Judges.

OPINION OF THE COURT

SCHENCK, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of failure to obey a lawful general order by wrongfully possessing drug abuse paraphernalia, failure to obey a lawful order by wrongfully possessing gamma butyrolactone (GBL),[1] wrongful possession and use of

1. GBL is a chemical used in many industrial cleaners and is synthesized by the body to produce gamma hydroxybutyrate (GHB) and its effects. *Ecstasy and Club Drugs: A Growing Threat to the Nation's Youth: Hearing Before the House Comm. on Gov't Reform: Subcomm. on Criminal Justice, Drug Policy and Human Res.,* 107th Cong. (2002) (statement of Asa Hutchin-

ketamine,[2] and wrongful possession of cocaine, in violation of Articles 92 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 912a [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dismissal. This case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.

We find that appellant's single assignment of error—that the approved sentence is inappropriately severe—has no merit. Although not raised as error, we find that appellant's guilty plea to violating a lawful general order (Dep't of Defense Directive 1010.4, Drug and Alcohol Abuse by DoD Personnel (Jan. 11, 1999) [hereinafter DoD Dir. 1010.4]) by wrongfully possessing drug abuse paraphernalia, was improvident because DoD Dir. 1010.4 is not punitive. We will affirm appellant's conviction, however, for the closely-related offense of dereliction of duty, in violation of Article 92(3), UCMJ. We also note that the acting staff judge advocate's post-trial Rule for Courts Martial [hereinafter R.C.M.] 1106 recommendation (SJAR) failed to describe pretrial restraint conditions and inaccurately stated the quantum portion of the pretrial agreement. We will take corrective action in our decretal paragraph and reassess appellant's sentence.

## FACTS

At the time of his offenses, appellant was a third-year cadet at the United States Military Academy, West Point, New York. He ranked first in his class of 1,061 based on his Cadet Performance Score (CPS)[3] and was assigned as a cadet company first sergeant in a company composed of approximately 130 fellow cadets. As cadet first sergeant, appellant was responsible for enforcement of discipline and accountability. He also worked with the cadet company commander ensuring performance of punishments awarded to cadets and assisting with health and welfare inspections. In general, appellant was expected to lead by example and especially to act as a role model for cadets in his company.

Appellant purchased ketamine in a New York City dance club and he bought GBL by using the Internet. Appellant inhaled ketamine on two occasions. While accompanied by another cadet, appellant snorted ketamine during the drive to a tanning salon in Vails Gate, New York and again on that same day as he returned to West Point. Also on that day, appellant's cadet roommate found a "bullet" (a snorting device) lying on his own bed. His roommate gave the "bullet" to his chain of command, who thereafter conducted a search of appellant's room. The command found a vial of ten micro milliliters of liquid ketamine,[4] two bottles of liquid GBL (seventeen and nineteen milliliters each), and one gram of cocaine in appellant's wall locker. While appellant's room was being searched, appellant telephoned another cadet and

---

son, Administrator, Drug Enforcement Administration) [hereinafter Statement of Asa Hutchinson], *http://www.usdoj.gov/dea/pubs/cngrtest/ct091902.html*. GBL is an analog of GHB, a central nervous system depressant. *Id.* GHB is a Schedule I drug under the Controlled Substances Act. 21 C.F.R. § 1308.11(e)(1) (2003).

GHB generates feelings of euphoria and intoxication.... At lower doses, GHB causes drowsiness, nausea, and visual disturbances. At higher dosages, unconsciousness, seizures, severe respiratory depression, and coma can occur.

GHB has been used in the commission of sexual assaults because it renders the victim incapable of resisting, and may cause memory problems that could complicate case prosecution. Statement of Asa Hutchinson. We note that there was no evidence presented concerning what appellant intended to do with the GBL he possessed.

2. Ketamine may be "injected, applied to smokable material, or consumed in drinks. Veterinari-

ans primarily use ketamine as an anesthetic; it causes intoxication and memory loss." Statement of Asa Hutchinson. Ketamine is a Schedule III drug under the Controlled Substances Act. 21 C.F.R. § 1308.13(c)(6) (2003).

3. The CPS reflects a "cadet's success in academic, military, and physical performance." UNITED STATES MILITARY ACADEMY, WEST POINT, NEW YORK, PHYSICAL PROGRAM (WHITEBOOK) [hereinafter WHITEBOOK] 47 (AY 02–03 ed. July 2002). The CPS formula is: CPS = .55 Academic Program Score + .30 Military Program Score + .15 Physical Program Score. *Id.* This same formula was in effect when appellant was ranked in September of 2000. WHITEBOOK 24 (AY 00–01 ed. July 2000).

4. Appellant explained that liquid ketamine must first be boiled before it can be inhaled as a residue powder.

warned the cadet to "dump your stuff" because "I'm busted."

Appellant was charged with and pleaded guilty to violating DoD Dir. 1010.4 by "wrongfully possessing drug abuse paraphernalia" for his possession of the "bullet" discovered on his roommate's bed.

## LAW

We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996). We will not overturn a military judge's acceptance of a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the guilty plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). A providence inquiry into a guilty plea must establish that the accused believes and admits that he is guilty of the offense, and that the factual circumstances admitted by the accused objectively support the guilty plea. *United States v. Garcia*, 44 M.J. 496, 497–98 (C.A.A.F.1996) (citing *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A.1994); R.C.M. 910(e)).

The President has limited the types of general orders or regulations that may proscribe conduct punishable under Article 92(1), UCMJ. *United States v. Shavrnoch*, 49 M.J. 334, 336 (C.A.A.F.1998) (citing *Manual for Courts–Martial, United States* (1995 ed.) [hereinafter *MCM*, 1995], Part IV, para. 16c(1)(e)).[5] As our superior court noted over thirty years ago, "[n]o single characteristic of a general order determines whether it applies punitively to members of a command." *United States v. Nardell*, 21 U.S.C.M.A. 327, 329, 45 C.M.R. 101, 103, 1972 WL 14133 (1972).

■ To determine whether DoD Dir. 1010.4 falls within the category of a "punitive" order or regulation it must first be examined as a whole, including the purpose statement. *Id.* at 329–30, 45 C.M.R. at 103–104. This court must determine whether the directive is merely a guideline for conduct or intended to regulate the conduct of individual servicemembers. *Id.* " 'Regulations which only supply general guidelines or advice for conducting military functions may not be enforceable under Article 92(1).' " *Shavrnoch*, 49 M.J. at 336 (quoting *MCM*, 1995, Part IV, para. 16c(1)(e)).

Second, "direct application of sanctions" for violations of an order or regulation must be "self-evident." *Nardell*, 21 U.S.C.M.A. at 329, 45 C.M.R. at 103, *cited with approval in MCM*, 2000, app. A23–5, Analysis of Punitive Articles, at A23-5-16. To be enforceable under Article 92(1), UCMJ, the order or regulation cannot rely on subordinate commanders for implementation to give it effect as a code of conduct. *Id.; see also United States v. Scott*, 22 U.S.C.M.A. 25, 27, 46 C.M.R. 25, 27, 1972 WL 14384 (1972); *United States v. Hode*, 44 M.J. 816, 818 (A.F.Ct. Crim.App.1996).

## DISCUSSION

### Nature of the Regulation

■ The overall purpose of DoD Dir. 1010.4 is general guidance. It does not seek to regulate the conduct of individual members of a command or to delineate a code of conduct. Specifically, the stated purpose of the directive, as set forth in paragraph 1, is to "update DoD *policies* and responsibilities for drug and alcohol abuse prevention." (emphasis added). This directive tasks various Assistant Secretaries of Defense with promulgating and implementing this general policy.

The direct application of sanctions (or punitive nature) of DoD Dir. 1010.4 is not self-evident. On the contrary, paragraph 2.2 of this directive states that it is "not intended to modify or otherwise affect statutory provisions and those regulations or DoD Directives concerned with determination of misconduct and criminal or civil responsibilities for persons' acts or omissions." Such language is not punitive, does not provide notice regarding possible criminal sanctions for violations, and, by implication, limits the directive's punitive nature.

Further, DoD Dir. 1010.4 expressly delegates implementation. Paragraph 5, "Responsibilities," requires the Under Secretary

**5.** Unless stated otherwise, cited *MCM* sections remain unchanged in the current 2002 edition.

of Defense for Policy to ensure that the DoD Coordinator for Drug Enforcement Policy and Support "[d]evelop[s] and promulgate[s] policies to ensure the detection and deterrence of drug abuse." Heads of the DoD components are responsible for policy enforcement and program implementation. DoD Dir. 1010.4, at para. 5.4.

During the providence inquiry, the military judge informed appellant that DoD Dir. 1010.4 "prohibits possession of drug abuse paraphernalia." This prohibition supports the directive's general policy to "prevent and eliminate drug and alcohol abuse and dependence from the Department of Defense." DoD Dir. 1010.4, at para. 4. Paragraph 4.8 further provides that it is DoD policy to "[p]rohibit members of the Military Services ... to possess, sell, or use drug abuse paraphernalia." [6] Considering the "guideposts [described above] and the prescribed purpose of the regulation, we have no choice but to construe paragraph [4.8] thereof as no more than a listing of the drugs and drug-related paraphernalia with which the drug [abuse prevention] program was to be concerned." *Scott,* 22 U.S.C.M.A. at 29, 46 C.M.R. at 29.

Moreover, "[t]erms in a regulation must be interpreted in light of the regulatory context in which they are found and in view of the purpose of the regulation as a whole." *United States v. Johnston,* 24 M.J. 271, 273 (C.M.A 1987). As this court has stated in the past, "We do not agree that the use of the word 'prohibited' *per se* is a single characteristic which determines that a general order applies punitively to members of a command." *United States v. Jackson,* 46 C.M.R. 1128, 1129, 1973 WL 14569 (A.C.M.R.1973).

We, therefore, hold that DoD Dir. 1010.4 is nonpunitive in nature. It does not unequivocally seek to regulate individual conduct, lacks clear language mandating punitive sanctions, and the "general theme prevalent throughout" is inconsistent with a finding to the contrary. *United States v. Hartgrove,* 44 C.M.R. 621, 623, 1971 WL 12581 (A.C.M.R. 1971). *But see United States v. Finsel,* 33

M.J. 739, 742 (A.C.M.R.1991) (finding a letter regarding use of firearms published under wartime conditions to be punitive, and holding that a specific punitive warning is not required—even in peace time), *aff'd on other grounds,* 36 M.J. 441 (C.M.A.1993).

We find that the record of trial raises a substantial, unresolved question of law and fact as to the providence of appellant's guilty plea to violating Article 92(1), UCMJ, with respect to Specification 1 of Charge I. *See Prater,* 32 M.J. at 436. The record indicates "appellant pleaded guilty to a charge involving a legal standard that does not constitute an offense under Article 92(1), thereby undermining his conviction '[a]s a matter of law.' " *Shavrnoch,* 49 M.J. at 339 (quoting *United States v. Faircloth,* 45 M.J. 172, 174 (C.A.A.F.1996)).

■ We must now consider whether appellant's responses to the military judge during the plea inquiry establish any other bases for criminal liability. We conclude that they do.

[I]f a regulation does not contain language establishing that it is a punitive regulation, a violation of the regulation is not a criminal offense under Article 92(1). A nonpunitive regulation, however, may be considered in the context of establishing a standard of military conduct with respect to the less serious offense of dereliction of duty.

*Shavrnoch,* 49 M.J. at 336 (citing *United States v. Bivins,* 49 M.J. 328, 331–32 (C.A.A.F.1998)).

Based upon appellant's plea admissions and stipulation of fact, we conclude that appellant is guilty of the closely-related offense of dereliction of duty under Article 92(3), UCMJ. First, we are satisfied that the specification of failure to obey a lawful general order by wrongfully possessing drug abuse paraphernalia placed appellant on notice that he could be convicted of dereliction of duty because "he was charged with the most seri-

---

**6.** "Drug Abuse Paraphernalia," as defined by DoD Dir. 1010.4, para. 3.5, includes "[a]ll equipment, products, and materials of any kind that are used, intended for use, or designed for use, in

... injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of 21 U.S.C. 801 *et seq.*"

ous offense under this article." *Bivins,* 49 M.J. at 332.

Second, appellant admitted the elements of dereliction of duty. *Id.* "In a dereliction case, the Government must prove that the accused knew or reasonably should have known of the applicable duty and that actions inconsistent with the duty were either willful, the result of neglect, or the product of culpable inefficiency." *Shavrnoch,* 49 M.J. at 337 (citing *MCM,* 1995, Part IV, para. 16c(3)). Appellant's responses during the providence inquiry fulfilled the government's burden.

Appellant admitted that, on or about 3 November 2000, he wrongfully possessed drug abuse paraphernalia. Appellant described his paraphernalia as a " 'bullet' ... a snorting device, and attached to it was a small glass vial that's used to hold illegal drugs." He further explained that the "bullet" had a valve to "trap" the illegal drugs in the glass vial. Appellant agreed that the primary use for this device was to assist in the ingestion of controlled substances,[7] he knew of no other use for the item, and he believed that it was drug abuse paraphernalia. Later, appellant explained that he had a duty to obey DoD Dir 1010.4, as follows:

> Sir, it's a general order from the Department of Defense, which means as a subordinate to that, I'm required to obey it, as well as the fact that in my position in the chain of command, it was my duty to—I guess you'd say I was [in]hibiting good order by possessing drug abuse paraphernalia.

Appellant's wrongful possession of the "bullet" was "willful" as defined under dereliction of duty in the *Manual for Courts–Martial.*[8] Specifically, appellant knew possession of the "bullet" was prohibited and knew the primary purpose of this device was to assist in the inhalation of illegal substances. Additionally, as a cadet company first sergeant, appellant assisted in health and welfare inspections of the barracks. Despite this knowledge and experience, appel-

lant maintained the drug abuse paraphernalia in his barracks room.

Third, dereliction of duty is "closely related" to the offense of violating a lawful general order under the facts of this case. Both offenses arise under Article 92, UCMJ, and appellant "knew the nature of the prohibited conduct." *Bivins,* 49 M.J. at 333. Further, the maximum sentence for dereliction of duty is less than the maximum sentence for failure to obey a lawful general order. *MCM,* 2000, Part IV, para. 16(e)(1) and (3).

In light of these facts, we may affirm a finding of guilty of dereliction of duty, an offense closely related to the charged offense of failure to obey a lawful general order. *See United States v. Epps,* 25 M.J. 319, 322–23 (C.M.A.1987) (affirming guilty plea to larceny because the providence inquiry established guilt of the closely-related offense of receiving stolen property); *United States v. Caver,* 41 M.J. 556, 564–65 (N.M.Ct.Crim.App.1994) (affirming guilty plea to wrongful appropriation because the providence inquiry established guilt of the closely-related offense of theft of services); UCMJ art. 59(b), 10 U.S.C. § 859(b) ("Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense."). We find that the conduct in this instance was necessarily included within the charged offense. *See* UCMJ art. 79, 10 U.S.C. § 879; *United States v. Foster,* 40 M.J. 140, 146–47 (C.M.A.1994).

We will modify Specification 1 of Charge I in our decretal paragraph to conform to the facts to which appellant admitted. *See United States v. Sanchez,* 54 M.J. 874, 878 & n. 5 (Army Ct.Crim.App.2001).

### Errors in Staff Judge Advocate's Recommendation

The SJAR erroneously advised the convening authority of the nature and duration of appellant's pretrial restraint by indicating "Pretrial Restraint: None." *See* R.C.M. 1106(d)(3)(D). In fact, for six days before his

---

7. Throughout the proceeding, counsel and the military judge used the term, "ingestion," interchangeably with the term, "inhalation."

8. " 'Willfully' means intentionally. It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences of the act." *MCM,* 2000, Part IV, para. 16c(3)(c).

trial appellant was restricted to the limits of the West Point main post area. Additionally, appellant was moved to the transient barracks and could not enter the cadet barracks without an escort. He could not eat in the cadet mess hall or consume alcoholic beverages. When leaving the cadet barracks area, appellant had to sign out through the transient barracks guard indicating his destination, and sign in upon his return. This restraint[9] was imposed upon appellant for a legitimate, non-punitive governmental purpose.[10] Appellant was restricted upon his return from administrative leave, in part, to avoid disrupting the remaining students who were preparing for final exams during the last week before testing. Appellant also expressed discomfort at being returned to the general cadet population.

Additionally, the SJAR inaccurately indicated that the pretrial agreement required the convening authority to "disapprove any part of a sentence to confinement in excess of eighteen (18) months." The pretrial agreement actually required the convening authority to disapprove any sentence to confinement exceeding thirty days and authorized approval of any other lawful punishment, except a fine. The SJAR, however, correctly explained that since appellant "was not sentenced to confinement, [the convening authority was] not obligated to take any action under the Pretrial Agreement." See R.C.M. 1106(d)(3)(E) (requiring a "statement of the reasons why the convening authority is not obligated to take specific action under the [pretrial] agreement").

We find no plain error in the SJAR's failure to properly describe restraint in accordance with R.C.M. 1106(d)(3)(D) and to accurately describe the quantum portion of the pretrial agreement. See R.C.M. 1106(f)(6). Neither trial nor appellate defense counsel asserted error or prejudice from these SJAR omissions. See United States v. Wheelus, 49 M.J. 283, 288 (C.A.A.F.1998). After review of the record, we are satisfied that appellant has not suffered error materially prejudicial to his substantial rights. See UCMJ art. 59(a). Based on the entire record, we are also satisfied that a correct statement of pretrial restraint and the quantum portion of the pretrial agreement in the SJAR would not have affected the sentence as approved by the convening authority. See UCMJ art. 66(c).

## DECISION

We have reviewed the matters raised by appellant under United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The court affirms only so much of the finding of guilty of Specification 1 of Charge I as finds that appellant, who knew of his duties at West Point, New York, on or about 3 November 2000, was derelict in the performance of those duties in that he willfully failed to refrain from wrongfully possessing drug abuse paraphernalia, to wit: a "bullet," a device used to inhale illegal drugs, as it was his duty to refrain from so doing, in violation of Article 92(3), UCMJ. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and the principles of United States v. Sales, 22 M.J. 305 (C.M.A.1986), the court affirms the sentence.

Senior Judge HARVEY and Judge BARTO concur.

---

9. Because of our disposition of this matter, we need not decide whether this restraint constituted conditions on liberty, restriction in lieu of arrest, or arrest, as those terms are defined in R.C.M. 304(a). However, practitioners should use these terms to describe the nature of restraint upon an accused in block 8 of the Charge Sheet, DD Form 458, and in the SJAR.

10. After hearing evidence, counsel argument, and entering findings, the military judge denied trial defense counsel's request for six days of sentence credit for unlawful pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813.