UNITED STATES, Appellee

v.

Gary D. WARNER, Private
U.S. Army, Appellant

No. 13-0435

Crim. App. No. 20120499

United States Court of Appeals for the Armed Forces

Argued September 18, 2013

Decided December 6, 2013

STUCKY, J., delivered the opinion of the Court, in which ERDMANN
and RYAN, JJ., and EFFRON, S.J., joined. BAKER, C.J., filed a
separate dissenting opinion.


Counsel


For Appellant:  Major Jacob D. Bashore (argued); Colonel Kevin
M. Boyle, Lieutenant Colonel Peter Kageleiry, Jr., Lieutenant
Colonel Jonathan F. Potter, and Captain Susrut A. Carpenter (on
brief); Lieutenant Colonel Imogene M. Jamison.

For Appellee:  Captain Kenneth W. Borgnino (argued); Lieutenant
Colonel James L. Varley (on brief); Lieutenant Colonel Amber J.
Roach.

Military Judge:  Jeffery R. Nance

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Warner, No. 13-0435/AR

Judge STUCKY delivered the opinion of the Court.

Appellant was convicted, inter alia, of possessing images "that depict minors as sexual objects or in a sexually suggestive way," in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012). We granted review to determine (1) whether Appellant had fair notice that the charged conduct was prohibited and subject to criminal sanction and (2) whether the evidence of the charged conduct was legally sufficient. We hold that Appellant was not provided fair notice that his conduct was subject to criminal sanction. We therefore need not and do not reach the second issue.

## I. Posture of the Case

Contrary to his pleas, Appellant was convicted by a military judge sitting alone as a general court-martial of one specification each of possession of child pornography, possession of images "that depict minors as sexual objects or in a sexually suggestive way," obstruction of justice, and possession of drug paraphernalia, all in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012). He was sentenced to a bad-conduct discharge and one hundred days of confinement. The convening authority approved the adjudged sentence and the United States Army Court of Criminal Appeals (CCA) affirmed in a per curiam opinion. United States v. Warner, No. 20120499 (A. Ct. Crim. App. Feb. 14, 2013) (per curiam).

2

## II.   Background

With respect to the granted issues, Appellant was charged with the following specifications related to images seized from certain digital media:

> Specification 2: In that [Appellant] did, at or near Fort Riley, Kansas, between on or about 6 April 2009 and on or about 17 November 2010, knowingly possess a Western Digital hard drive bearing serial number WCASU4440064, containing some images of child pornography, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

> Specification 3: In that [Appellant] did, at or near Fort Riley, Kansas, between on or about 6 April 2009 and on or about 17 November 2010, knowingly possess a Western Digital hard drive bearing serial number WCASU4440064, containing some images that depict minors as sexual objects or in a sexually suggestive way, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

To prove these specifications at trial, the Government introduced the charged images into evidence as Prosecution Exhibit 7.  Prosecution Exhibit 7 contains folders of images specific to each specification.  The folder for Specification 3 contains twenty unique images[1] of minor girls, none of which depicts nudity.  Rather, these images depict minor girls posing provocatively in revealing clothing, with highly distasteful captions superimposed on the images.

---

[1] The folder contains twenty-three total images, but three are duplicates.

While the military judge (MJ) took judicial notice of the federal definition of child pornography found in 18 U.S.C. § 2252A (2006), for Specification 2, the record contains no definitions for "sexual objects" or "sexually suggestive." The only mention at trial of the conduct charged in Specification 3 occurred during closing arguments, where the Government argued:

> And, Your Honor, Specification 3 is child erotica, which minors portrayed [sic] in sexually suggestive ways, or as sexual objects, but they may be fully clothed. The photos on that disc, Prosecution Exhibit 7, contain several images of child erotica. This is also prejudicial to good order and discipline, and service discrediting.

The MJ convicted Appellant of both specifications, excepting the words "being prejudicial to good order and discipline in the armed forces"; thus the Appellant was convicted of service-discrediting conduct.

### III. Law

Appellant did not object to Specification 3 at trial. Rather, he first presented the arguments set out in the granted issues in a motion for reconsideration before the CCA, which was summarily denied. When not objected to at trial, defects in an indictment are reviewed for plain error. See United States v. Cotton, 535 U.S. 625, 631 (2002). Under plain error review, "Appellant has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused."

4

United States v. Warner, No. 13-0435/AR

United States v. Wilkins, 71 M.J. 410, 412 (C.A.A.F. 2012) (citation and quotation marks omitted).

IV.  Discussion

A.  Error

     The first and second clauses of Article 134, UCMJ, permit the criminalization of certain conduct not otherwise prohibited that is either prejudicial to good order and discipline or service discrediting.  Article 134, UCMJ.  It is settled that a servicemember may be prosecuted for service-discrediting conduct even if the conduct is not specifically listed in the Manual for Courts-Martial.  United States v. Saunders, 59 M.J. 1, 6 (C.A.A.F. 2003) (citing United States v. Vaughan, 58 M.J. 29, 31 (C.A.A.F. 2003)).  However, due process requires that a servicemember "have 'fair notice' that his conduct [is] punishable before he can be charged under Article 134 with a service discrediting offense."  Vaughan, 58 M.J. at 31 (quoting United States v. Bivins, 49 M.J. 328, 330 (C.A.A.F. 1998) (brackets in original), and citing Parker v. Levy, 417 U.S. 733, 756 (1974)).  Potential sources of fair notice may include federal law, state law, military case law, military custom and usage, and military regulations.  Vaughan, 58 M.J. at 31.[2]  The

_____

[2] Appellant also contends that the specification is void for vagueness.  While the due process concepts of fair notice and vagueness are related, see Parker v. Levy, 417 U.S. 733, 757 (1974), we need not decide whether a specification is

5

test for constitutional notice that conduct is subject to criminal sanction is one of law. It does not turn on whether we approve or disapprove of the conduct in question.

None of the potential sources identified in Vaughan provided notice to Appellant that possession of images that depict minors "as sexual objects or in a sexually suggestive way" was subject to sanction under Article 134. Although Title 18 of the United States Code addresses at length and in considerable detail the myriad of potential crimes related to child pornography, these sections provide no notice that possession of images of minors that depict no nudity, let alone sexually explicit conduct, could be subject to criminal liability. See generally 18 U.S.C. ch. 110 (2012); see also United States v. Vosburgh, 602 F.3d 512, 538 (3d Cir. 2010) (noting, in a prosecution for possessing child pornography, that images of "child erotica" were legal to possess, and admitted only to show intent to commit the charged offense); United States v. Gourde, 440 F.3d 1065, 1070 (9th Cir. 2006) (recognizing that adult pornography and child erotica constitute "legal content"). Similarly, the Government has identified no state law that reaches Appellant's conduct; on the contrary, each state law identified by the Government requires at least

---

unconstitutionally vague where, as here, Appellant lacked fair notice that the alleged conduct was forbidden.

6

that nudity be depicted.  This assumes, without deciding, that

state statutes could provide meaningful notice under Article 134

in the face of extremely detailed regulation of this area by

Congress.  Finally, nowhere does our case law, customs of the

services, or usage provide notice of criminality with respect to

such material.  Cf.  United States v. Barberi, 71 M.J. 127, 130

(C.A.A.F. 2012) (holding that images that do not depict a

lascivious exhibition of the genitals or pubic area cannot

constitute child pornography as defined by the federal statute).[3]

Simply put, although child pornography is a highly regulated

area of criminal law, no prohibition against possession of

images of minors that are sexually suggestive but do not depict

nudity or otherwise reach the federal definition of child

pornography exists in any of the potential sources of fair

notice set out in Vaughan and available to Appellant.  It

follows that the Appellant received no such notice.

---

[3] The Government argues that Appellant should have had notice
that his conduct was subject to punishment under Article 134,
UCMJ, based on this Court's decision in United States v. Mason,
60 M.J. 15 (C.A.A.F. 2004).  However, Mason was a case about
plea providence which involved child pornography; notice was
never discussed.  There was no question in Mason that the
accused was on notice that the charged conduct was subject to
criminal sanction; he was charged with receipt of child
pornography as defined by the Child Pornography Prevention Act
of 1996, 18 U.S.C. § 2252A (2000).  Id. at 17.

### B.  Obvious and Prejudicial

At a minimum, an error is "plain" when it is "obvious" or "clear under current law."  United States v. Olano, 507 U.S. 725, 734 (1993) (quotation marks omitted); see also Henderson v. United States, 133 S. Ct. 1121, 1130 (2013) (holding that "whether a legal question was settled or unsettled at the time of trial, it is enough that an error be plain at the time of appellate consideration" (quotation marks omitted)).  Here, the due process error -- charging Appellant with conduct which he lacked fair notice was subject to criminal sanction -- is obvious under current law:  It is well settled, and was well settled at the time of Appellant's court-martial, that a servicemember must have fair notice that an act is criminal before being prosecuted.  See Saunders, 59 M.J. at 6; Vaughan, 58 M.J. at 31.  Appellant has further suffered material prejudice to his substantial rights, as he stands convicted of the conduct as to which he lacked notice.

### V.  Decision

The judgment of the United States Army Court of Criminal Appeals is reversed as to Specification 3 of Charge I and the sentence.  The finding of guilty to Specification 3 of Charge I is set aside and the specification is dismissed.  The judgment as to the remaining findings is affirmed.  The record of trial

is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals to reassess the sentence.

<u>United States v. Warner</u>, No. 13-0435/AR

BAKER, Chief Judge (dissenting):

The question presented by this case is whether a reasonable member of the armed forces would have fair notice that possession of images charged under Specification 3 were of a nature to bring discredit upon the armed forces and thus subject to Article 134 sanction. Article 134, UCMJ, 10 U.S.C. § 934 (2012). Specification 3 charged Appellant with possession of "some images that depict minors as sexual objects or in a sexually suggestive way." The images depict young prepubescent and pubescent girls in sexually suggestive positions. In several of these images, girls are dressed as prostitutes in G-strings; one such image even exposes pubic hair, though not the private parts. Superimposed on these images are aggressive commands such as "POUND HER PUSSY!" and "MAKE THIS BITCH GIVE HEAD UNTIL HER FACE TURNS RED!"

The majority concludes that Appellant was not on fair notice that possession of these pictures would bring discredit upon the armed forces. <u>United States v. Warner</u>, __ M.J. __ (2, 8) (C.A.A.F. 2013). I disagree. Any reasonable member of the armed forces (in fact any member of the armed forces) of any grade or service would know that these pictures were service discrediting, based on the elements of Article 134, UCMJ, and common sense. Therefore, I respectfully dissent. My analysis follows.

Section I describes the pictures at issue.  Section II demonstrates that the additional forms of notice discussed in Vaughan and Saunders are not required because Article 134, UCMJ, elements provide fair notice where common sense makes their reach obvious as recognized by the extensive case law of military courts.  United States v. Vaughan, 58 M.J. 29 (C.A.A.F. 2003); United States v. Saunders, 59 M.J. 1 (C.A.A.F. 2003).  In Section III, I discuss the repercussions of this Court's adoption of a literal and mechanistic interpretation of Article 134, UCMJ, notice.

I.    The Pictures

The questions we need to answer are not whether "child erotica" is constitutionally protected, whether it is an offense under Title 18, or whether Appellant was on fair notice that "child erotica" was service discrediting.[1]  That is not this case.  Rather, this case is about a specific defendant possessing specific pictures depicting specific children as

---

[1] Courts examining these questions have struggled to define the term "child erotica" as well as to define the reach of the law in civilian context with respect to "child erotica."  I would too.  However distasteful the concept of "child erotica," the term covers such a wide range of possible images that it would be hard to pinpoint just what is included.  Moreover, in the context of the broader child pornography field that is both highly regulated and nuanced as a result of Supreme Court case law, it would be hard to determine in the abstract what "child erotica" would violate Title 18, or for that matter Article 134, UCMJ, even if one could agree on what the term meant.  But that is not this case.

2

charged in a particular specification under Article 134(2), UCMJ.

Here, Appellant was charged with the possession of twenty-three specific pictures that depict minor children as sexual objects or in a sexually suggestive way.[2]  The majority of these images feature young girls with barely developed breasts wearing flimsy G-strings in blatantly sexual poses, often lying atop a bed, straddling a chair, or pushing up against the floor or wall.  In one such image, a prepubescent girl is shown in split panels wearing high-heeled red patent leather boots that are laced to her knees.  On the right-hand side panel, she is standing atop a red, white, and blue-colored banner, provocatively tugging on a skimpy, flag-themed G-string.  Her legs are slightly bent, and she has hyperextended her torso.  On the left-hand panel of the same image, the girl is shown in a side-profile bending over with her hands on her knees, glancing provocatively at the viewer.  The following captions are superimposed on the images, respectively:  "YOU WANT SOME PUSSY, HUH?!" and "WHITE BITCHES GIVE HEAD!"

Another split-image shows a young girl draped across a bed, her hand resting on her exposed buttocks, and pubic hair visible through the G-string.  To the left of this image, the same girl is shown in a short skirt and top standing with her legs parted

---

[2] Three images were duplicates.

3

and her hands are on her hips edging up her skirt.  The

superimposed captions say:  "GET SOME PUSSY!" and "WHITE GIRLS

GIVE HEAD!," respectively.

Indeed, most of the images include aggressive, graphic

commands like "POUND HER PUSSY!," "100% PUSSY PLUNGING FUN!,"

"PLOW HER PUSSY!!," "MAKE THIS BITCH GIVE HEAD UNTIL HER FACE

TURNS RED!," and "THIS GIRL LOVES SUCKING COCK!"  The folder and

file names for these images are equally graphic and sexually

charged, consisting of a series of keywords such as "STUPID

YOUNG GIRLS IN THONGS," "9yo 10yo 11yo," "White Girl Jailbait

BANG," "Ass in a THONG," "kdquality pedo," and "preteen pussy."

The question is:  would a reasonable servicemember have

fair notice that possession of these images was of a nature to

discredit the armed forces?  Answer:  Yes.

II.  Fair Notice

The majority and the dissent agree that "conduct that is

not specifically listed in the [Manual for Courts-Martial] may

be prosecuted under Article 134."  Saunders, 59 M.J. at 6

(citing Vaughan, 58 M.J. at 31; see Manual for Courts-Martial,

United States pt. IV, para. 60.c(6)(c) (2012 ed.) (MCM)

(permitting the use of specifications not listed in the MCM to

allege offenses not listed in paras. 61–113 as offenses under

clause 1 or 2 of Article 134, UCMJ)).  Moreover, "Manual

provisions describing offenses cognizable under Article 134 are

4

merely illustrative." United States v. Johnson, 14 M.J. 1029, 1031 (A.C.M.R. 1982), aff'd, 17 M.J. 251 (C.M.A. 1984) (citing United States v. McCormick, 12 C.M.A. 26, 28, 30 C.M.R. 26, 28 (1960)).

We also agree that it is an elemental principle of due process that a defendant charged with an Article 134, UCMJ, service-discrediting offense must have fair notice that his conduct was punishable. Vaughan, 58 M.J. at 31 (citing United States v. Bivins, 49 M.J. 328, 330 (C.A.A.F. 1998)). Fair notice can be actual notice, as in the case of a highway speed limit sign. It can also be constructive in nature. As reflected in the truism that "ignorance of the law is no defense," fair notice and actual notice are not coterminous. The law provides fair notice where a reasonable person reading the law and any supporting sources would have knowledge that the conduct was prohibited.

Notice derives primarily from the elements of the offense itself. For Article 134(2), UCMJ, the elements are:

(1) That the accused did or failed to do certain acts; and
(2) That, under the circumstances, the accused's conduct was . . . of a nature to bring discredit upon the armed forces.

MCM pt. IV, para. 60.b.

"Discredit" is defined in the MCM as "to injure the reputation of." Id. at para. 60.c(3). The MCM further

5

explains, "[t]his clause of Article 134 makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." Id.

At the same time, it is well settled at this Court and the service appellate courts that one can apply common sense to determine whether a reasonable military member had fair notice that conduct fell within the reach of Article 134, UCMJ. One such court held that, "[c]ommon sense, if nothing else, tells us that appellant's conduct constitutes a violation of Article 134, notwithstanding the fact that paragraph 213f of the MCM does not describe the [specific] offense." United States v. Gipson, 16 M.J. 839, 841 (N.M.C.M.R. 1983).

Likewise, and most recently, in United States v. Ashby, this Court held that "common sense supports the conclusion that [Appellant] was on notice that his conduct violated the UCMJ" and that there was "no doubt that [Appellant], as a seasoned officer and aircraft pilot, understood that under the circumstances his actions would reflect poorly upon him as an officer and would discredit the service." United States v. Ashby, 68 M.J. 108, 119 (C.A.A.F. 2009). In that case, this Court held that the Appellant -- who was the pilot of an EA-6B Prowler aircraft that struck weight-bearing cables of a cable car killing twenty people -- had reasonable notice that taking a videotape from the aircraft, hiding it in his quarters, and

eventually providing the tape to a colleague to "get rid of it"
was both service discrediting and conduct unbecoming an officer
and a gentleman.  Id. at 118.  In fact, this Court determined
that Appellant's conduct in "failing to hand over a videotape
that he knew would have evidentiary value in an Italian
investigation violated his official duties."  Id. at 119.  Thus,
this Court held that the Appellant could not claim that "he
lacked notice of the criminality of his conduct by virtue of the
absence of the inclusion of foreign criminal proceedings in the
MCM."  Id. at 118.

    Similarly, in Anderson, the Air Force Court of Criminal
Appeals held:

> In all these instances, before a military member can
> be charged with an offense under Article 133 or
> Article 134, due process requires that the member have
> 'fair notice' that the conduct at issue is forbidden
> and subject to criminal sanction. . . . Put another
> way, in the context of Article 134, the issue is
> whether a reasonable military member would know that
> his or her conduct was service-discrediting (and,
> therefore, punishable under the Article).

United States v. Anderson, 60 M.J. 548, 554 (A.F. Ct. Crim. App.
2004) (emphasis added), review denied, 60 M.J. 403 (C.A.A.F.
2004).

    Moreover, there is extensive case law supporting common
sense and reasonableness as grounds for fair notice.  See United
States v. Sullivan, 42 M.J. 360, 366 (C.A.A.F. 1995) ("Finally,
we turn to appellant's claim that he was not on fair notice that

the conduct alleged in the amended specification was criminal. In our view, any reasonable officer would know that asking strangers of the opposite sex intimate questions about their sexual activities, using a false name and a bogus publishing company as a cover, is service-discrediting conduct under Article 134."); United States v. Hartwig, 39 M.J. 125, 130 (C.M.A. 1994) ("Any reasonable officer would recognize that sending sexual overtures to a stranger . . . risk[s] bringing disrepute upon himself and his profession."); United States v. Frazier, 34 M.J. 194, 198-99 (C.M.A. 1992) ("Accordingly, we conclude that a reasonable military officer would have no doubt that the activities charged in this case constituted conduct unbecoming an officer."). See also United States v. Weller, No. NMCCA 201100043, 2012 CCA LEXIS 154, 2012 WL 1514821 (N-M. Ct. Crim. App. Apr. 30, 2012), review denied, 71 M.J. 380 (C.A.A.F. 2012) ("The crime of negligent discharge of a firearm is meant to address a failure to follow well-established safety precautions as well as common sense, the result being a weapons discharge that threatens good order and discipline or tends to discredit the armed forces."); United States v. McCreight, 39 M.J. 530, 533–34 (A.F.C.M.R. 1994), aff'd, 43 M.J. 483 (C.A.A.F. 1996) ("Customs of the service provide notice to an officer of what limits exist on relationships with enlisted subordinates when other regulatory or statutory guidance does not. Customs

of the service also provide notice to officers of what behavior is unbecoming an officer and gentleman, prejudicial to good order and discipline, and service discrediting."); United States v. Johnson, 39 M.J. 1033, 1037–38 (A.C.M.R. 1994) ("Some acts are inherently prejudicial to good order and discipline or discrediting to the service.  Others require an assessment of the circumstances surrounding the commission of the offense in making the determination.  Generally, offenses involving moral turpitude are inherently prejudicial or discrediting." (internal citations omitted)).  United States v. Guerrero, 33 M.J. 295, 297 (C.M.A. 1991) (agreeing with the appellate court that "it is reasonable to assume that [Appellant] was well aware that there were appropriate standards of civilian attire to which sailors must adhere" and that the "UCMJ had been explained to appellant, so that he had 'fair notice' that conduct prejudicial to good order and discipline in the armed forces and all conduct of a nature to bring discredit upon the armed forces were punishable").

Where, however, the elements and common sense would not put a reasonable person on notice as to what is proscribed, some additional source of notice is required before a person can be said to be on fair notice that conduct is subject to criminal sanction.  In the context of Article 134, UCMJ, this is of particular concern given its potential breadth and indeterminate

nature. On this basis, this Court looked to additional sources of notice beyond the elements in two recent cases -- Vaughan and Saunders -- because it was not obvious and apparent from the elements of Article 134, UCMJ, alone whether the conduct was prohibited.

In Vaughan, the defendant was charged with leaving her forty-seven-day-old baby unattended in a crib at an off-base residence while she spent nearly six hours at a night club located ninety minutes away. Vaughan, 58 M.J. at 30. This Court affirmed the accused's conviction of child neglect despite her claim that she did not have fair notice that her conduct [of child neglect] was subject to criminal sanction under Article 134, UCMJ, and that she did not receive proper notice as to the specific elements of the offense. Id. at 35–36. In holding there was sufficient notice, we identified additional potential sources of notice beyond the elements including the "MCM, federal law, state law, military case law, military custom and usage, and military regulations." Id. at 31. Writing for the majority, I drew upon Department of Defense (DOD) regulations to give contextual support for "military custom and usage" involving the care of dependents. Id. However, Vaughan also noted with care that these were potential sources of notice, not required sources of notice. Id. at 33. Six months after Vaughan, this Court elaborated in Saunders that it "did not

10

require notice of specific elements set down in writing before the offense is committed, only 'fair notice' that conduct was criminal. . . . [s]uch notice could arise from military custom and usage, which is clearly not defined by elements or with mens rea specificity." 59 M.J. at 8.

In the present case -- in addition to fair notice through the elements and common sense -- we are also able to infer Appellant had notice through his conduct. Specifically, after he was reported by a friend and member of the unit, Appellant contacted a friend and member of his unit to request that he destroy these images along with others in his collection. Appellant attempted to destroy the evidence not once, but twice. The second time was while he was in custody. Finally, he did not raise the issue of notice until he sought reconsideration before the CCA. In other words, he was on fair notice until this Court's decision in Barberi raised for the first time the possibility that possession of these types of images did not meet the definition of pornography under the Child Pornography Prevention Act (CPPA).[3]

---

[3] In Barberi -- before the MCM codified the definition -- the majority qualified its holding by conceding that, "[c]harges for the possession of child pornography could be brought pursuant to clauses (1) or (2) of Article 134 without reference to the definitions laid out in the CPPA, thereby creating a completely different set of elements required for conviction." United States v. Barberi, 71 M.J. 127, 131 (C.A.A.F. 2012).

Accordingly, the fair notice question in this case is as follows:  Is it obvious and apparent based on the elements and common sense whether Article 134, UCMJ, would apply to the charge and images?  Or are the charge and images of a sort requiring some additional source of fair notice?  I take the former position based on the nature of the images described above.  The majority takes the latter position.

III.  Implications

The majority's rigid and formalistic approach to fair notice in the context of Article 134, UCMJ, if sustained, is problematic for three reasons.

First, it transforms the test for fair notice by focusing exclusively on the words contained in a specification rather than the underlying conduct they describe.  Thus, the majority does not address the pictures in this case at all, but looks only to the specification's use of the term "sexually suggestive" to determine that Appellant was not on fair notice that his conduct was of a nature to discredit the armed forces.  However, notice is a question that can only be answered by considering Appellant's conduct in the context of the specification; that is, by looking at the images.  In short, the question is not whether an accused is on fair notice that possession of sexually suggestive pictures is an offense.  After all, much if not most advertising -- including advertising

12

geared towards children -- might fall into this description. The question is whether the possession of these images as described in the specification as sexually suggestive is an offense. Yet there is no analysis of the pictures by the majority.

Second, the majority fails to consider whether and how the elements of the offense and common sense as applied to these images would or would not have placed a reasonable member of the armed forces on notice that his conduct was service discrediting. Indeed, the elements of the offense and common sense are the threshold sources of fair notice, before one turns to the additional sources of notice described in Vaughan and Saunders. These cases provide a possible reference point to other sources such as military custom and usage; they do not artificially curtail all future considerations of custom and usage to a prefabricated set of formalized, regulatory guidance. To emphasize, the list in Vaughan and Saunders was inclusive and not collectively exhaustive such that no other source might exist, including -- most significantly -- plain English understanding of the elements of the offense and common sense.

However, the majority appears to require a specific reference in a specific regulation to the specific conduct -- here, a graphic description of which sexually suggestive images are prohibited and which portray children as sexual objects.

13

That is not what Vaughan and Saunders -- or the extensive history of Article 134, UCMJ, case law, for that matter -- require.  In short, an accused is entitled to "fair notice" of the criminality of conduct charged as service discrediting under Article 134, UCMJ, but this does not require published notice of the precise wording of the elements as applied in each and every context.  Saunders, 59 M.J. at 9.  "Such a view is consistent with Article 134's purpose of capturing service discrediting conduct that might not have been foreseen by the drafters of the UCMJ or those charged with its subsequent implementation in changing and complex military circumstances."  Id.

More fundamentally, however, such a view defeats the disciplinary purpose of Article 134, UCMJ.  The Supreme Court "has long recognized that the military is, by necessity, a specialized society separate from civilian society."  Parker v. Levy, 417 U.S. 733, 743 (1974).  At a basic level, this is because the purpose of the military is to fight the nation's wars and "[n]o question can be left open as to the right to command in the officer."  Id. at 744 (quoting United States v. Grimley, 137 U.S. 147, 153 (1890)).  And "[w]hile the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections."  Id. at 758.  Accordingly,

14

"[s]peech that is protected in the civil population may nonetheless undermine the effectiveness of response to command. If it does, it is constitutionally unprotected." Id. at 759 (citations omitted).

This Court recently applied this rationale to an Article 133, UCMJ, violation governing conduct unbecoming to an officer which functions as a companion to Article 134, UCMJ.[4] In broadly interpreting Article 133, UCMJ, we held conduct that "disgraces [an officer] personally or brings dishonor to the military profession affects his fitness to command the obedience of his subordinates so as to successfully complete the military mission." United States v. Forney, 67 M.J. 271, 275 (C.A.A.F. 2009). Finding that conduct "need not be a violation of any other punitive article of the Code, or indeed a criminal offense at all, to constitute conduct unbecoming an officer," this Court found the accused's conduct of downloading virtual child pornography to be a violation of Article 133, UCMJ, even though "possession of virtual child pornography may be constitutionally

---

[4] In fact, the drafters of the UCMJ noted that the clause "conduct of a nature to bring discredit upon the armed forces" was essentially added to the general articles after World War I by the Judge Advocate General of the Army who urged its inclusion so as to try retired noncommissioned officers and soldiers in the same manner as officers would be tried under Article 133, UCMJ, for conduct unbecoming an officer. Article 134, UCMJ; Charles L. Decker et al., Dep't of Defense, Legal and Legislative Basis, Manual for Courts-Martial, United States 294-95 (1951).

15

protected speech in civilian society." Id. I argue this approach is applicable to Article 134, UCMJ, as well.

To be sure, Article 134, UCMJ, is not a "catchall as to make every irregular, mischievous, or improper act a court-martial offense." United States v. Sadinsky, 14 C.M.A. 563, 565, 34 C.M.R. 343, 345 (1964). But it does serve to allow commanding officers the flexibility in dealing with improper behavior from subordinates. For example, the accused in Sadinksy argued that he did not have fair notice that jumping from the ship into the sea was violative of Article 134, UCMJ. The majority of the board of review members agreed that the specification did not "allege facts bringing the accused's act within the prohibition of some order, regulation, or statute limiting conduct or defining the offense sought to be charged" thus concluding the specification failed to allege a cognizable offense. 14 C.M.A. at 566, 34 C.M.R. at 346. But this Court disagreed. In doing so, we noted that "[t]o superimpose a requirement that conduct be prohibited by some order, regulation, or statute in order to fall within the proscription of the first category of Article 134 would be contrary to the clear and fair meaning of its terms." Id. (emphasis added). Moreover, "[i]f certain acts fell within other specific articles of the Code, they would, manifestly, be 'specifically mentioned' elsewhere in the Code, and be outside the scope of the General

16

Article." Id. This Court concluded, "applying such a standard would effectively emasculate the very essence of Article 134." Id.

Nearly fifty years later, we are at risk of doing just that. As such, I respectfully dissent. There was sufficient notice using the elements and common sense for a reasonable member of the armed forces to understand such conduct to be service discrediting.